## THE STATE v. SAM DWORKIN, Appellant.

### Division Two, April 9, 1925.

1. **ARSON: Sufficient Evidence: Circumstantial Evidence.**  The *corpus delicti* being fully established, the evidence in this case, in which defendant is charged with arson in the third degree, being quite consistent with his guilt and inconsistent with his innocence, was sufficient to submit to the jury the question whether he set the fire in a warehouse, the old furniture therein being insured in his favor for far more than its value, although no one saw him in or near the warehouse at the time of the fire or recently before its occurrence.

2. ———: **Insurance: Contents of Policy: Secondary Evidence.**  Where the insurance companies canceled their policies on the furniture on the day the fire was discovered in the warehouse, defendant is in no position to complain that, while the foundation was laid for secondary evidence, competent secondary evidence was not introduced to show the contents of the policies and that they insured against fire, where no such point was made at the trial, a witness testified that two companies represented by him had policies of fire insurance on the furniture in definite amounts and no objection was made to the general statement of the existence of fire insurance.  And where he himself exhibited a policy issued by one of said companies insuring him against fire on his separate store, in order to show the kind of policy written by said company on the furniture in the warehouse, stated by him to be the same kind of a fire insurance policy as the canceled warehouse policy, both containing clauses providing payment of full cash value on goods destroyed, the evidence is conclusive that the canceled policies insured against fire, because he proved the fact himself by the exhibit and his testimony.

3. ———: **Instruction: Upon Conceded Fact: Insurance.**  It is not harmful error for an instruction to fail to require the jury to find a fact concerning which there is no dispute.  Where defendant him-

State v. Dworkin.

self proved that the property he is charged to have feloniously burned was insured against fire, an instruction telling the jury that "if he set the fire with the intent to defraud certain insurance companies," etc., omitting to require them to find that the goods were insured, is not reversible error.

4. ———: ———: ———: ———: **Ownership.** The fact being conceded that the insured property which defendant is charged with having burned belonged to him and another, an instruction which does not require the jury to find they were the owners, but apparently assumes that they were, even if the statute required proof of ownership, would not be error. But the statute (Sec. 3288, R. S. 1919) does not require that the property insured shall belong to the person charged with the arson, or that it shall belong to any particular person; it only requires that it shall be insured against loss by fire, and that it shall be burned with intent to defraud or prejudice the insurer, "whether the same be the property of such person or any other."

5. ———: ———: **Requirement to Find Property Was Insured in Named Companies.** Where the instruction required the jury to find that defendant "with the intent to defraud and damage certain fire insurance companies," naming them, "and certain other companies mentioned in evidence and that said companies were insurers of the goods set fire to," and "certain other companies mentioned in evidence" were shown to have insured the goods burned, it is immaterial whether the proof showed that the goods were insured in the companies named, and the instruction was not error, although the proof that the goods were insured in them was not as satisfactory as it might have been made if objection to its sufficiency had been made.

6. ———: ———: **Assumption of Crime Committed: Alibi.** An instruction on alibi for the State telling the jury that defendant "says he was not present at the time and place of the commission of the crime, but was elsewhere" and, "if the jury find from the evidence in the cause that the defendant was elsewhere than at the place of the alleged crime, at the time of the commission of said crime, then they should find the defendant not guilty" does not assume that a crime was committed, and could not have misled the jury.

7. ———: ———: **Circumstantial Evidence: Assumption That Defendant Committed the Crime.** An instruction telling the jury that "in this case the State seeks to convict defendant on circumstantial evidence, that is, that there is no direct evidence that any witness

State v. Dworkin.

saw the defendant commit the crime charged in the information"· does not assume that defendant committed the crime because no witness saw him commit it, and is not erroneous.

Citations to Headnotes: 1, Arson, 5 C. J. 66; 2 and 3, Criminal Law, 16 C. J. 1559, 17 C. J. 3331, 3697; 4 to 7, Arson, 5 C. J. 25, 50, 74; Criminal Law, 17 C. J. 3694, 16 C. J. 2331.

Appeal from Buchanan Circuit Court.—*Hon. W. H. Utz,* Judge.

AFFIRMED.

*Sherman, Stigall & Kranitz* and *Strop & Silverman* for appellant.

(1) There was no evidence of guilt sufficient to authorize a submission of the case to the jury. State v. Ruckman, 253 Mo. 487; State v. Morney, 196 Mo. 43. (2) No direct evidence of the commission of the crime or of defendant's connection therewith was produced, and the evidence was wholly insufficient to support a conviction. In circumstantial evidence proof to sustain a conviction must show first the criminal act, the *corpus delicti,* second the defendant's guilty agency in its production. The evidence here fails to sustain either requirement named. State v. Crabtree, 170 Mo. 650; State v. Jones, 106 Mo. 312; State v. Dickson, 78 Mo. 477; State v. Bowen, 247 Mo. 584. (3) At most there is merely a strong suspicion that defendant committed the crime charged. Mere suspicion, however grave, or even strong probabilities of guilt, will not sustain a conviction. Cases supra; State v. Scott, 177 Mo. 665; State v. Goodson, 299 Mo. 330; State v. Rutledge, 262 S. W. 726; State v. Ferrell, 248 S. W. 979; State v. Jones, 106 Mo. 302. (4) Where there is no substantial evidence of guilt, or the evidence is so weak that the necessary inference is that the verdict is the result of passion, prejudice or partiality, it is the duty of this court to reverse the judgment. State v. Glahn, 97 Mo. 689; State v. Howell, 100 Mo. 659; State v. Goldstein,

225 S. W. 911; State v. Bass, 251 Mo. 126; State v. Casey, 247 S. W. 116; State v. Singleton, 294 Mo. 346, 360. (5) There is no sufficient evidence of insurance against fire upon the property described in the information. No evidence as to the contents of the policies was offered. Nothing more than the name of the company, the amount of the policy, and as to two companies only the class of insurance was shown. (6) Instruction five is erroneous. (a) It does not require the jury to find that the property charged to have been set fire to was insured against fire as required by the statute and as charged in the information. Sec. 3288, R. S. 1919. (b) It authorizes a conviction upon a finding that the property was insured by the Home Fire and Marine Insurance Company and the Detroit Fire and Marine Insurance Company. There is no evidence that these policies were policies of insurance against loss by fire and therefore as to these companies there is no evidence upon which to base the instruction. (c) By the words "and certain other companies mentioned in evidence" contained in the instruction, it authorized a conviction upon a finding that the property was insured by the Stuyvesant Insurance Company of New York, which company was not named in the information as one of the insurers, and therefore as to this company the instruction submits issues not tendered by the information and is broader than the charge. State v. Britt, 278 Mo. 512. (d) It assumes that the goods were the property of defendant and one I. Karpf, as alleged in the information, a fact required to be proved as alleged. Authorities under next point. (7) Instruction six is erroneous and prejudicial. It in effect tells the jury that unless defendant was at another place when the fire was started he should be convicted. It tells the jury that alibi is the only defense instead of one of the defenses. It tells the jury as a fact that the crime was committed although the evidence of the commission of a crime by anyone is purely circumstantial. An instruction assuming controverted facts is erroneous. State v. Fox, 276 Mo. 378; State v. Mills, 272 Mo. 526; State v. Johnson,

234 S. W. 794; State v. Norman, 232 S. W. 452; State v. Collins, 237 S. W. 516. (8) Instruction seven is erroneous in that it also assumes that a crime was committed.

*Jesse W. Barrett*, Attorney-General, and *George W. Crowder*, Assistant Attorney-General, for respondent.

(1) The evidence was overwhelming that the crime of arson had been committed by some one. This being true, appellant's complaint that the court's instructions assumed that a crime had been committed must go for naught. This proposition was not controverted. The only question was whether appellant was the perpetrator of the crime, and of this there was substantial, even ample, evidence to take the case to the jury and sustain the verdict. State v. Meyer, 259 Mo. 306, 318. (2) The use of the words, "property of the defendant and one I. Karpf," in Instruction 5, did not make the instruction erroneous for the reason the statute leveled against arson committed for the purpose of defrauding insurers does not require either the specific allegation or proof of ownership. The statute says: "whether the same shall be the property of such person or any other." Sec. 3288, R. S. 1919. (3) There was no error in giving Instruction 6. An identical instruction in all essential respects has received the express approval of this court. State v. Barton, 214 Mo. 316, 322.

WHITE, J.—In the Circuit Court of Buchanan County, on a trial by jury, the appellant was found guilty of arson in the third degree, under Section 3288, Revised Statutes 1919, and his punishment assessed at imprisonment in the penitentiary for two years.

The fire which the appellant is charged to have set occurred July 4, 1923. He was at that time engaged in the furniture business with one I. Karpf, under the name of "Economy Household & Furniture Company;" whether it was a partnership or a corporation the record does

not clearly show. The furniture store so conducted was situated at 413-415 South 5th Street, in the city of St. Joseph—a property owned by one Mrs. Cunningham. To the rear of this store and across the alley was a warehouse also owned by Mrs. Cunningham. In this warehouse the appellant and his partner kept a lot of miscellaneous furniture of doubtful value. The charge in the second count of the information, on which the case went to the jury, was that the defendant set fire to the goods and merchandise in the warehouse with intent to defraud certain named insurance companies who had written fire insurance on the said merchandise.

Since the defendant demurred to the evidence at the close of the plaintiff's case, and again at the close of all the evidence, and here assigns error to the action of the court in overruling said demurrer, it is necessary to set out at some length the facts tending to show the guilt of the defendant.

The fire was discovered between five and six o'clock the morning of July 4, 1923, by a neighbor, Stella Griggs, who lived adjacent to the warehouse. She testified that early in the night before, odors of gasoline were coming from the warehouse so strong she could hardly sleep. Discovering the fire next morning she gave the alarm, and a force from the fire department arrived a few minutes later. They found the fire inside. The warehouse was a brick building; the doors were locked, the windows protected by iron bars and barricaded from the inside by boxes and other obstructions which were packed against them. The firemen effected an entrance by breaking open the door. The fire was burning in a large barrel, partly filled with straw and emitting a smell of kerosene. It had scorched the rafters above the barrel and for some distance to one side; otherwise, no particular damage was done before it was extinguished. The warehouse was two stories. The firemen found nine large bottles, called by some witnesses jars and jugs, each of about five gallons capacity, and about half full of gasoline, placed at intervals down stairs in the warehouse,

with a "tail" leading from where the fire was discovered, to the jars. The jars were uncorked, and what is termed a "necktie" of excelsior was tied around the neck of each of the bottles. Excelsior was strewn through the building and over the furniture. The bottles, in the condition in which they were, would be broken when the excelsior necktie should take fire. All of the bottles were found to be intact except two which were cracked. All of them were produced in evidence as exhibits. Photographs of the interior appear in the record, showing a miscellaneous lot of apparently cheap furniture, said by some of the witnesses to be household furniture which had been taken in the sale of new furniture. The straw in the barrel where the fire started was soaked with coal oil. The nearest that the fire had got to any one of the jugs was about eight feet.

It is not disputed that the evidence sufficiently established the *corpus delicti*. The defendant claims here only that the evidence is insufficient to submit to the jury the question of the defendant's agency in the crime. Some question arises as to when the fire started. It is claimed by the appellant that it was discovered immediately after it was started, otherwise more damage would have been done than appeared. However, it is not an unreasonable inference that some contrivance was used to delay the actual burning after the match was set, and that active combustion was delayed longer than was intended.

The Economy Household & Furniture Company carried $7,000 insurance on the property, although only $6,000 was carried in three companies mentioned in the information. As stated, the merchandise in the warehouse was mostly old furniture, much of it worthless, and witnesses for the State estimate its value at from $250 to $600. The appellant and his partner estimated its value at $2500 to $3,000. The defendant claimed that at the time it was invoiced, at the first of the year, it was worth as much as it was insured for.

The doors to the warehouse were locked. The defendant, when arrested, stated to the officer that there were only two keys to it; that he always kept one and his partner, Mr. Karpf, kept the other; Karpf was absent at the time of the fire at Excelsior Springs, and had been away for ten days. No one else, apparently, had access to the warehouse except the two owners. The defendant arrived at the fire soon after the firemen did, and desired to enter, but the firemen refused to allow him to go in. He asked the chief what caused the fire and was told he would see it in the newspapers. He stood and watched the building for about twenty or thirty minutes and went away.

Chief Detective Duncan sent two officers with Dworkin to the store, and they asked him to unlock the safe. He was so nervous that he could not unlock it. Duncan described him as being greatly excited. One witness testified that he went to the building a day or two before the fire for the purpose of measuring it. He found the door locked and two men there who told him he could not come in; he measured from the outside. Dworkin himself testified, as did Karpf, that there was a third key to the building which hung in the store and to which employees had access; that they had discharged some employees, and the key afterwards had been missed. Defendant offered evidence to show good character, which was not contradicted; also, evidence tending to prove an alibi. On this evidence the defendant was found guilty as stated, and appealed from the judgment thereupon rendered.

I. The first error assigned is to the action of the court in overruling the defendant's demurrers to the evidence. There is no doubt that the *corpus delicti* was fully established. The surroundings showed that the fire was of incendiary origin. We think the evidence is sufficient from which the jury might reach a satisfactory conclusion that the defendant set the fire. They were not obliged to believe his own

Sufficient
Evidence.

evidence about the keys.   Evidence for the State tends to show that he was the only one in the city at the time who had a key, or had access to the building.   Insurance on the property was far above its value.   The windows, all barred, had pasteboard boxes nailed over them inside, so that no one could see in.   That necessarily caused the inside to be too dark to permit work there without artificial light in the day time.   The arrangement for spreading the fire was made with some ingenuity and must have required considerable time.   That a stranger, with no authorized access to the building, could have got in the five-gallon jars, half full of gasoline, and distributed them without the knowledge of the defendant, is extremely unlikely.   His demeanor at the time of his arrest and his contradictory stories about the keys, were all circumstances which the jury could weigh.   He was the only one who had the opportunity, and, excepting his absent partner, the only one who might have had the motive. These important facts are inconsistent with his innocence and quite consistent with his guilt.   The evidence was sufficient to submit that issue to the jury.   [State v. Myer, 259 Mo. l. c. 318.]

II.   As a further ground why the demurrer should be sustained it is asserted that the evidence was insufficient to show insurance against fire.   The day the fire was discovered the insurance companies canceled their

Insurance. policies so that they were not introduced in evidence.   It is claimed by appellant that, while the foundation was laid for secondary evidence, competent secondary evidence was not introduced to show the contents of the policies.   No such point was made at the trial. One Loren Garlisch testified that on July third two companies represented by him, the Importers & Exporters of New York and the Stuyvesant Insurance Company of New York, each had a policy on the furniture in the warehouse, the former for $3,000 and the latter for $1,000. These were described by the witness as being fire insurance on the stock of furniture.   No objection was made to

this evidence, either that it insufficiently stated the contents of the policies, or that it did not sufficiently show that fire insurance had been placed by those companies on the stock of goods. The witness was not even cross-examined as to the character of the insurance. Since there was no objection to this general statement of the existence of fire insurance, defendant is not in position now to complain that the fact was not proven. Further, the defendant himself exhibited a policy written by the Importers & Exporters of New York on his store in the front, in order to show the kind of policy which was issued by that company on the goods in the warehouse. While the policy was offered for the purpose of showing a clause which provided payment of full cash value on goods destroyed, it was stated by the defendant that it was the same kind as the canceled warehouse policy, which was a fire insurance policy. That policy, as an exhibit, is attached to the record. It is a refinement to say that when this policy was exhibited to the judge for the purpose of showing one clause, he should blind himself to its character as a fire insurance policy. It is not only evidence of the fact, but it is conclusive upon the defendant, because he offered it himself, and thus proved that fire insurance was written on the goods by the Importers & Exporters.

III. Error is assigned to the giving of instruction numbered 5, which is of the same length. First, on the ground that it does not require the jury to find that the property was insured against fire. It did require a finding that the defendant feloniously set fire to certain merchandise, the property of the Economy Household & Furniture Company, under which name defendant and Karpf were doing business, and that he set the fire with the intent to defraud certain fire insurance companies, naming them. The trial court did not commit harmful error in failing to require the jury to find a fact about which there was no dispute. As shown above, the defendant himself offered exhibit "Y", a fire insurance policy in the Im-

*Instruction.*

*Conceded Fact..*

porters & Exporters Company, and proved that the property in the warehouse was insured by a like policy.

It is further claimed that Instruction 5 is erroneous because it did not require the jury to find that the property insured was property of defendant and one I. Karpf, as alleged, but apparently assumed that fact. The fact was not disputed. Besides, Section 3288 does Ownership. not require that the property insured shall belong to the person charged with the arson, or that it shall belong to any particular person. It requires only that it shall be insured against loss by fire, and that it shall be burned with intent to defraud or prejudice the insurer, "whether the same be the property of such person or any other." This court had occasion to consider that section in the case of State v. Bersch, 276 Mo. l. c. 412, where it is said that it is not at all necessary that the accused should have been the owner of, or had interest in, the property. The matter of ownership is entirely immaterial.

Appellant also objects further to Instruction 5, where it requires the jury to find that the defendant, "with the intent to defraud and damage certain fire insurance companies, to-wit, The Home Fire & Marine Insurance Company of California, and that said company is a corporation, and the Detroit Fire & Marine Insurance Company of Detroit, and that said Company is a corporation, and certain other companies mentioned in evidence and that said companies were insurers of the goods set fire to, mentioned in the information and described in evidence." It is claimed by the defendant that this part of the instruction is improper because there was no evidence that two of the companies named, the Home Fire Insurance Company of California and the Detroit Fire & Marine Insurance Company of Detroit, which were mentioned in the information, insured the property against fire. One Mr. Marshall, who testified upon that point, said that each company held an insurance policy of $1500 on the warehouse of the Economy Household & Furniture Company, but he did not say they were fire insurance

policies. Those policies were in fire insurance *companies*, and were canceled immediately after the fire. The information alleged that those two companies insured the property against loss and damage by fire. If Mr. Marshall's testimony had been objected to at the time on the ground that it was not relevant under the allegation, the State could have supplied the omission. But it was not objected to at all, and was admitted as coming within the issues and supporting the allegations in the information. No other kind of insurance than fire insurance was thought of. But it was not necessary to prove that those two companies had fire insurance on the property. The instruction required the jury to find not only that those two had insurance upon the property, but also to find that "certain other companies mentioned in the evidence were insurers of the goods set fire to." It was not material whether the two companies had fire insurance on the property or not, and the jury's finding upon that point was wholly superfluous. The "certain other companies mentioned in the evidence" included the Importers & Exporters Insurance Company of New York, which was named in the information, and which defendant himself proved insured the property against fire, as shown above. The jury was required to find that *all* those companies, including the Importers & Exporters, mentioned in the evidence had fire insurance.

IV. Error is assigned to the giving of instruction numbered 6, which is as follows:

"The jury are instructed that the defendant alleges as a defense in this case, an alibi; that is, he says he was not present at the time and place of the commission of the *alleged crime*, but was elsewhere. Now, if the jury find from the evidence in the cause that the defendant was elsewhere than at the place of the alleged crime, at the time of the commission of the said crime, then they should find the defendant not guilty; and if, upon a full consideration of all the evidence in the cause, the jury have a reasonable doubt as to the defendant's presence at said time and place, they should acquit him."

Assumption of Fact.

This, on the ground that it assumed a fact which should be proven—that the crime was committed. The instruction is on alibi, and the burning is mentioned as the commission of the "alleged crime," and in that connection the "alleged crime" is mentioned twice, and afterwards "said crime" is mentioned. The "said crime," of course, means the one just before mentioned, that is the "alleged crime." If this instruction, instead of "commission of the alleged crime" had said "the alleged commission of the crime charged," there probably would have been no complaint. This is not an assumption that a crime was committed. Without circumlocution it would be hard to speak of the alleged offense in any manner better to indicate that the charge of the crime, and not its commission, was spoken of. No jury would be misled by that kind of an instruction, and in the argument to the jury the State's attorney could hardly attempt to make them believe that the court had assumed that a crime had been committed. This court in State v. Barton, 214 Mo. l. c. 322, approved an instruction almost identical with Instruction 6.

V. Further complaint is made of Instruction 7, in regard to circumstantial evidence, which begins with this paragraph:

"The court instructs the jury that in this case the State seeks to convict the defendant on circumstantial evidence, that is, that there is no direct evidence that any witness saw the defendant commit the crime charged in the information."

<div style="margin-left:2em; font-style:italic;">Assumption of Guilt.</div>

It is claimed that that assumes that the defendant committed the crime because it says "no witness saw the defendant commit" it. That language is exactly the same as saying there is no direct proof that the defendant committed the crime charged to him, because no eyewitness swears that he saw it. Neither grammatically nor logically can that be constructed to mean that the defendant committed the crime, but nobody saw him do it.

The judgment is affirmed. *Blair, J.*, concurs; *Walker, P. J.*, not sitting.