**STATE of Missouri, Respondent,**

v.

**Emmett PARKER, Appellant.**

**No. 36556.**

Missouri Court of Appeals,
St. Louis District,
Division Four.

Aug. 10, 1976.

Motion for Rehearing and for Transfer to Supreme Court Denied Sept. 30, 1976.

Application to Transfer Denied
Dec. 13, 1976.

Shaw & Howlett, C. Clifford Schwartz, Clayton, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., James S. Haines Jr., Jefferson City, for respondent.

ALDEN A. STOCKARD, Special Judge.

Emmett Parker was charged as a second offender with setting fire to and burning a building with the intent to injure and defraud the insurance company which had insured the contents thereof.

Appellant first challenges the sufficiency of the information because it did not set forth "the manner and means by which [he] was to have committed the offense." He asserts that this "created an unfair and prejudicial burden upon [him] in meeting the uncertainty of the charge." No cases are cited.

The information charged that appellant on a stated day "unlawfully, wilfully, maliciously and feloniously [did] set fire to and burn a certain building of [naming owner] situated at 5716 Dr. Martin L. King Drive * * * with the felonious intent then and there to injure and defraud [naming the

insurance company], the insurer of said building which contents–occupied as record stocks of said building was then and there insured unto the said [appellant] against loss and damage by fire in the sum of four thousand dollars * * *."

Section 560.030 RSMo 1969 provides in its material parts as follows:

"Any person who shall willfully and with the intent to injure or defraud the insurer set fire to, burn or cause to be burned any goods, wares, merchandise or other chattels or personal property of any kind which shall at the time be insured by [the] person * * * against loss or damage by fire shall be guilty of a felony * * *."

In *Hodges v. State,* 462 S.W.2d 786, 789 (Mo.1971) the Supreme Court of this State, in considering the sufficiency of an information charging robbery, stated: "Certain rules have been enunciated for testing the sufficiency of an information, among which are: It must state essential facts constituting the offense charged. *State v. Cunningham,* Mo., 380 S.W.2d 401, 403[4]; it must adequately notify a defendant of the charge against him and constitute a bar to further prosecution for the same offense, *State v. Tandy,* Mo., 401 S.W.2d 409, 412–413[3]; and if the information does these things following the language of the statute or words of similar import, poor draftmanship, if existent, will never render it fatally defective, *State v. Harris,* Mo., 313 S.W.2d 664, 669[3]."

█ Although poorly drafted, the information in this case followed the language of the applicable statute and set forth all the essential elements of the offense.

█ Appellant's contention that the information, as worded, placed a prejudicial burden on him to meet the "uncertainty of the charge" implies a reference to Mo. Const. Art. I, § 18(a) wherein it is provided that an accused has the right "to demand the nature and cause of the accusation." However, that provision does not require that the State plead the evidence with which it intends to prove the commission of the offense. *State v. Spica,* 389 S.W.2d 35, 40 (Mo.1965). The statute applicable to this case makes it an offense to burn insured goods with the intent to defraud the insurer. The charge that appellant did burn the described goods with that intent is the "nature and cause of the accusation." The act of burning may be accomplished in various ways or means, and proof of the particular way or means employed constitutes evidence of the commission of the offense. A comparable situation may be found in *State v. McKinney,* 528 S.W.2d 1 (Mo.App.1975). It was there held that it was not necessary to set forth in an information charging first degree robbery by means of a dangerous and deadly weapon a definition or description of the weapon employed, but that the information need only allege the language of the statute.

█ This does not mean that appellant was not entitled to be informed of what the State intended to claim constituted the "manner and means" of committing the charged offense if necessary to prepare a defense. Rule 24.03 provides: "When an indictment or information alleges the essential facts constituting the offense charged but fails to inform the defendant of the particulars of the offense sufficiently to prepare his defense, the court may direct or permit the filing of a bill of particulars." Appellant did not request a bill of particulars, and his failure to do so constituted a waiver of the lack of any detail in the information. *State v. Davis,* 510 S.W.2d 790 (Mo.App.1974).

Appellant's second point, in its entirety is as follows: "The Court committed prejudicial error in overruling defendant's motion to suppress and exclude confessions of fact and statements against interest." This point fails to comply with Rule 84.04(d) in that it fails to set forth wherein and why the action of the court is claimed to be erroneous. In the argument pertaining to the point, appellant contends the he was "neither advised of his rights [presumably "Miranda rights"] nor was he informed that the purpose of Officer Ginther's conversation with him was for the Officer's formal

report." No authorities are cited in the argument.

Apparently appellant had reference to a statement made by him to Police Officer Ginther at the time of the fire. Officer Ginther testified at the hearing on the motion to suppress that he arrived at the scene of the fire at about 3:30 o'clock in the morning, and that in making his investigation he talked to appellant. In answer to the question as to what appellant said, Officer Ginther stated:

> "He identified himself as Mr. Parker and stated he was the owner of the real estate and he stated he had left and secured the premises about 10:30 p. m. and had driven to Kiel Auditorium to pick up his wife, Gloria. He further stated that while at Kiel Auditorium picking up his wife, a lady known to him as Francine stated she had parked her car in front of the 5700 Martin Luther King address and requested to be driven back to that location which he did; and, on arriving, he found the fire apparatus there."

 Aside from its inadequacy, the point is without merit for several reasons. First, we find nothing in the statement attributed to appellant that constituted a confession or a statement against interest. Second, the questioning of appellant by Officer Ginther was made in the course of his on-the-scene investigation, and it did not constitute in-custody interrogation. As stated in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), "General on-the-scene questioning as to facts surrounding [the] crime or other general questioning of citizens in the fact-finding process is not affected by our holding." It has repeatedly been held that responses to pre-custodial inquiries are not inadmissible because of a failure to give *Miranda* warnings. *State v. Duncan,* 495 S.W.2d 460, 462 (Mo.App.1973); *State v. Ralls,* 472 S.W.2d 642, 647 (Mo.App.1971). Third, no objection whatever was made when Officer Ginther testified at the trial that appellant made to him the statement referred to above.

We will consider appellant's third and fourth points together. They are that the trial court erred in denying his motion for judgment of acquittal (Point III) "at the close of the State's evidence because the finding and judgment of the court is against the weight of credible evidence," and (Point IV) "at the close of all the evidence because the evidence presented and the hypothesis relied upon by the State in establishing the guilt of the defendant were not consistent with each other."

 We first note as to Point III that appellant did not stand upon his motion for acquittal at the close of the State's case, but introduced evidence of his own. Therefore, he waived any error with respect to the denial of that motion. *State v. Thomas,* 452 S.W.2d 160, 162 (Mo.1970). In addition, the weight of the evidence is not a matter reviewable by an appellate court, *State v. Thomas,* 530 S.W.2d 265 (Mo.App.1976), but is an issue for the trial court in ruling on the motion for new trial. *State v. Talbert,* 454 S.W.2d 1 (Mo.1970). It is reasonably apparent, however, that appellant contends by these two points that the State did not make a submissible case based in part on circumstantial evidence, and we shall so consider the points.

Appellant was the owner of the Dynamic Record Shop located at 5716 Dr. Martin Luther King Drive in the City of St. Louis. The premises were rented from Albert Eisenberg, and on April 28, 1973, the fixtures and inventory in the record shop were covered by a fire insurance policy issued by the Missouri Property Insurance Placement Facility. Appellant operated the record shop with Gloria Ford, his "common-law" wife. In the nine months they had owned the record shop, it had not been a profitable operation. The shop had only one door and appellant and Gloria were the only persons who had a key, and on the night of the fire each had his or her key. At about 7:00 o'clock, or possibly a little earlier, on the evening of April 28, 1973, appellant took Gloria and two other persons to a show at Keil Auditorium. During the evening appellant's son was in charge of the record shop, and many young persons including appellant's other children, were present.

Some smoked cigarettes and lit matches while in the shop, and one lit matches and "flipped" or "popped" them at others who were present, but no fire was started. Appellant later returned to the record shop, and after he "ran everybody out" he closed the shop about 10:30 o'clock and locked the door. According to appellant, he then drove to Keil Auditorium to pick up Gloria and her companions, and when he returned to the record shop, where one of the persons had left her automobile, he discovered that a fire had broken out. Patrolman Brennan of the St. Louis Police Department testified that it was "approximately twelve o'clock" when appellant arrived with two other persons.

At 11:17 o'clock of the evening of April 28, 1973, Captain Haggard and four firemen responded to a fire alarm and went to the record shop where they observed smoke coming out of the front of the building. All the windows were closed and secured. After breaking the lock on the iron grate in front of the door Captain Haggard forced open the door and entered and observed a "fire burning on the east wall of the front room." When that fire was extinguished, the firemen looked for an "extension" of the fire into the walls, ceiling, or floor and found none. However, Captain Haggard noticed that there were smoke stains immediately above a drawer in the counter, and when he opened the drawer he found a crumpled newspaper to which had been taped three paper match books and a cigarette. The cigarette had burned and ignited two of the books of matches, and had caused some burning of the paper but the fire had gone out, apparently because of the lack of oxygen. This clearly was an incendiary device which had malfunctioned.

There was no heat producing equipment in the area of the fire along the east wall, and there was no indication that the fire was caused by a malfunction of any electrical equipment or defective wiring. There was no direct evidence as to the cause of this fire. However, if an incendiary device such as the one found in the drawer was used it could have been destroyed by fire before the firemen arrived.

 Detective Brooks of the St. Louis Police Department, found a small can on a pile of debris behind the counter and along the east wall which contained a small amount of liquid of the same chemical composition as lighter fluid. Nothing else was found that could have caused the fire, but Detective Brooks expressed an opinion as an expert that the fire along the east wall was the "result of arson." He stated that he based his opinion on the "incendiary device * * * and also the flammable substance in the area of the fire." Although there was an objection to the question and a motion to strike the answer, there is no point on appeal challenging the reception into evidence of the opinion of Detective Brooks, and therefore for our purpose it constitutes evidence of causation. *State v. Paglino,* 319 S.W.2d 613 (Mo.1958).

In *State v. Jackson,* 267 S.W. 855, 857 (Mo.1924), it was stated: "Arson is not a crime which may be expected to be committed openly and in broad daylight. It is a crime usually undertaken in stealth and under cover of darkness and at an hour when few, if any, observers are likely to be about. Unless accused confesses his crime or is caught in the act, guilt must usually be proven by circumstantial evidence." In determining the sufficiency of the evidence, in this case we observe the rule that "even in cases where the evidence is wholly circumstantial, all the substantial testimony tending to support the verdict must be considered as true, and every legitimate inference therefrom favorable to the verdict must be indulged," *State v. Thompson,* 428 S.W.2d 742, 744 (Mo.1968).

 The evidence unquestionably is sufficient to establish motive and opportunity on the part of appellant. See *State v. Paillou,* 321 S.W.2d 445 (Mo.1959), and *State v. Ferrara,* 320 S.W.2d 540 (Mo.1958). However, in addition "There must be proof of circumstances from which the jury will be authorized to find the further fact that such fire was of incendiary origin * * * [and] that the accused was the incendiary."

*State v. Pierson*, 343 Mo. 841, 123 S.W.2d 149, 155 (1938). Both the incendiary origin of the fire and the guilty agency of the accused may be established by circumstantial evidence. *State v. Berkowitz*, 325 Mo. 519, 29 S.W.2d 150 (1930).

We have here a combination of circumstances, none alone being sufficient to establish definitely the incendiary origin of the fire along the east wall. But, the store was closed. at approximately 10:30 o'clock; the fire was discovered at approximately 11:00 o'clock; there is evidence that the fire did not result from defective wiring or an overheated appliance; there was an almost empty can of lighter fluid on the debris where the fire occurred; and most important, there was an incendiary device in a nearby drawer of the counter in the store which had ignited, burned a little, and then had gone out because of the lack of oxygen. This device could not have been created by accident or without design to create a fire, and a similar device, if used, would have been destroyed in the fire at the east wall.

· The next issue is whether the evidence authorizes a finding that appellant was the incendiary agency. Appellant cites several cases. What appears to be the strongest case in his favor is *State v. Ruckman*, 253 Mo. 487, 161 S.W. 705 (1913), where, in addition to the incendiary nature of the fire, there was proof of motive on the defendant's part and "possible opportunity" for him to have carried out such motive, and this was held insufficient. However, as pointed out in *State v. Ferrara*, supra at page 545, the court in the *Ruckman* case was careful to point out that the State's own witnesses put the defendant in his hotel room two hours before the fire, and that he did not thereafter leave until awakened and informed of the fire, and in ruling the case the court observed that "the state's own evidence tends to show that the defendant did not cause the fire." *State v. Dworkin*, 307 Mo. 487, 271 S.W. 477, 479 (1925), decided subsequent to the *Ruckman* case, seems to be more in point on its facts. That was a prosecution for setting fire to goods and merchandise with intent to de-

fraud the insurers thereof. A fire was discovered in a warehouse about 5:00 o'clock one morning burning in a barrel partly filled with straw and emitting a smell of gasoline. It was quickly extinguished, and the firemen found nine large bottles of about five gallon capacity filled with gasoline placed at intervals along the floor. The bottles were uncorked and a "necktie" of excelsior was tied around the neck of each. The primary question was defendant's agency. The court recognized that arson may be committed by use of some contrivance or means to delay the actual burning, and it was deemed to be of primary significance that no one other than the two owners had access to the warehouse, and the other owner was absent from the city. The court commented: "He [defendant] was the only one who had the opportunity, and, excepting his absent partner, the only one who might have had the motive. These important facts are inconsistent with his innocence and quite consistent with his guilt. The evidence was sufficient to submit that issue [the criminal agency of defendant] to the jury."

In this case the property was insured and the business was not a profitable enterprise; the building was locked and secured when the firemen arrived, and appellant and his absent partner were the only ones who had a key, which made appellant the only one immediately prior to the fire who had exclusive authorized access; there was no evidence that the fire could have resulted from defective wiring or negligent use of electrical appliance, in fact, the evidence was to the contrary; appellant was at the store and left it within the time that he could have installed a delayed incendiary device, such as the one that was found; and it is most improbable that a stranger could or would have in some way obtained entrance to the building and set the fire. Under these circumstances the evidence meets all the requirements for the proof of a case by circumstantial evidence. The trial court correctly overruled appellant's motion for judgment of acquittal.

Appellant next asserts that the trial court erred when it allowed, over objection, the testimony of Albert Eisenberg in rebuttal because it "did not tend to explain, counteract, repeal or disprove evidence offered by the defendant." In this appellant is clearly wrong.

Mr. Eisenberg was the owner of the building from whom appellant rented space in which to operate his record shop. Appellant testified that he paid rent by the month, that he was never behind in his rent, and that at the time of the fire the rent payments were current. As a rebuttal witness Mr. Eisenberg testified that at the time of the fire the rent was eighteen days overdue.

■ Appellant cites and relies on *Bean v. Riddle*, 423 S.W.2d 709, 720 (Mo.1968), wherein it was said that if a party is allowed, in the discretion of the court, to introduce rebuttal evidence *on his case in chief*, the party is not entitled as a matter of right to introduce further evidence on the same point in rebuttal of his adversary's case, but having "elected to rebut it in advance, he should then put in all his evidence on that point." In this case the State attempted to establish by Mr. Eisenberg in its case in chief the status of appellant's rent payments at the time of the fire, but was prevented from doing so by reason of the court sustaining appellant's objection to such testimony. The *Bean* case has no relevancy to the issue here presented.

■ The rebuttal testimony of Mr. Eisenberg did refute the testimony of appellant on a material issue; that of motive. Moreover, a trial court has broad discretion in permitting rebuttal testimony, *State v. Adams*, 465 S.W.2d 536, 540 (Mo.1971), and there could not possibly have been an abuse of discretion in this case.

Appellant also asserts that it was error for the trial court to permit the prosecution to cross-examine Gloria Ford, appellant's "common law" wife "as to matters relating to [his] character when in fact no such evidence was presented on direct examination [of this witness] by the defendant."

At the time Gloria Ford testified appellant had already placed his good character in issue. It is true that when Gloria Ford testified for appellant she was not asked any question on direct examination concerning appellant's reputation for good or bad character. On cross-examination the prosecutor was permitted to question her relating to appellant's character. Appellant cites no case holding that this was not permissible.

■ We first note that Gloria Ford was not charged with any offense, and she was not the wife of appellant. See § 546.260 RSMo 1969. Therefore, any limitation on the cross-examination of those persons because of their status is not in this case.

■ Second, if the examination had been improper, which it was not, there was no prejudicial error. Gloria Ford testified that "In the community we live, [appellant's] reputation [for truthfulness, veracity and good moral character] is good," and his "reputation on the job is especially good." She further testified that she had not heard reports in the community that appellant had been convicted or arrested.

■ Third, the cross-examination was permissible pursuant to § 491.070 RSMo 1969, which, in its material part, provides:

"A party to a cause, civil or criminal, against whom a witness has been called and given some evidence, shall be entitled to cross-examine said witness (except where a defendant in a criminal case is testifying in his own behalf) on the entire case, * * *."

When appellant, by use of previous witnesses placed his character in issue, that character became a part of "the entire case." When Gloria Ford was subsequently called by appellant and testified, she was then subject to cross-examination "on the entire case," which included appellant's reputation for good character. Although the precise question here presented was not involved, in *State v. West*, 349 Mo. 221, 161 S.W.2d 966 (1942), the court held that the above statutory provision "undoubtedly entitled the State to cross-examine the appellant's

witnesses [as distinguished from the appellant] as fully as could have been done in a civil case."

Appellant's seventh point is that the trial court erred in overruling his motion for a mistrial when Officer Kelfisch, a witness for the State, "testified to the alleged statement made by the defendant when in fact the statements were different from those supplied to the defendant's attorney * * pursuant to the court order of July 25, 1973." By that order the court sustained "Defendant's Motion to Inspect" wherein appellant requested to be permitted to "inspect and copy or photograph any relevant written, oral or recorded statements or confessions made by the Defendant, or copies thereof, which are known by the Circuit Attorney to be within its possession, custody or control." The court "Sustained Defendant's Motion to Inspect Recorded Statements against Interest and Confessions of Fact."

On May 1, 1973, Officer Kelfisch, a detective assigned to the Bombing and Arson Section, interviewed appellant at the record shop. At the time he made handwritten notes as to the statements made by appellant. He thereafter prepared a typewritten report, a copy of which was furnished by the Circuit Attorney to appellant pursuant to the Order to Inspect. The handwritten notes were retained by the officer, or at least were not given to the Circuit Attorney until during the trial, and the notes or a copy thereof, were not furnished to appellant prior to trial. Appellant now asserts that the notes were, in one respect, different from the typewritten report, and that he was prejudiced by not receiving in advance of trial the information contained in the handwritten notes.

In the typewritten report prepared by Officer Kelfisch, which was furnished to appellant, appears this statement which purports to be based on statements made by appellant to the officer: "He [appellant] then returned home to 5551 Cabanne, where he ate and took a bath. He continued that he then returned to the record shop. This was about 10:00 p. m., and while he was gone, his sons * * *." Although this statement and the handwritten notes were introduced in evidence as exhibits neither has been filed with this court. From the record it appears that the handwritten notes, as we have been able to reconstruct them, are as follows: "I [appellant] went back home—took a bath, etc. It was about 10:00 p. m. There was a lot of kids in the shop and I ran them out and closed the shop."

We first note that appellant's basis for a mistrial, as stated to the trial court, was that he "did not have the information contained" in the handwritten notes, and that by failing to provide him with the handwritten notes there was a noncompliance with the Court Order sustaining the Motion to Inspect. At one time, in argument, counsel asserted that "nowhere [in the typewritten report] appears the statement made at the trial of this cause just a few minutes ago by Mr. Kelfisch, that [appellant] said that he returned to the store at about 10:00 o'clock p. m." We also note that appellant's point in his brief is directed to the fact that Officer Kelfisch "testified to the alleged statements" made by appellant "when in fact the statements were different" from those furnished to him. The point clearly asserts error in permitting testimony brought out by appellant on cross-examination to which no one made an objection; not to an alleged failure of the Circuit Attorney to comply fully with the Motion to Inspect. But in argument appellant asserts error because the handwritten notes were not furnished to him, and he relies on Rule 25.32. We note, however, that Rule 25.32 did not become effective until after the trial of this case, and the applicable rule is that stated in *State v. Aubuchon*, 381 S.W.2d 807 (Mo.1964). It was there stated that the issue is whether the withholding of material in the possession of the prosecutor resulted in appellant's trial being "fundamentally unfair;" an issue which rests, in the first instance, in the discretion of the trial court, and which is reviewed on appeal to determine whether there was an abuse of that discretion.

The trial court examined the handwritten notes and the typewritten statement and ruled that they were "consistent with each other," and that the Circuit Attorney had complied with the Motion to Inspect. We agree with these conclusions. In addition, appellant has not demonstrated wherein or how he was prejudiced by failing to receive the handwritten notes during the trial when they first came into the possession or custody of the Circuit Attorney.

Appellant's final point is that prejudicial error resulted when the trial court refused the following requested instruction:

"You are instructed that because of the State's failure to call all of their witnesses in this cause, you can presume that the evidence they would give would be unfavorable to them."

The total argument is that "Detective Gary Fuhr, 7th District [and] B. E. Meredith" were endorsed as witnesses, and "clearly these witnesses were not equally available to the defendant."

Appellant cites only *State v. Wallach*, 389 S.W.2d 7 (Mo.1965), and *State v. Davis*, 504 S.W.2d 221 (Mo.App.1973). Neither of these cases support his contention. They hold only that it is permissible to *argue* the adverse inference theory when witnesses available to the State but not equally available to the defendant are not called if it can reasonably be expected their testimony would be more than mere cumulative testimony. Neither case discusses whether a defendant is entitled upon request to such an instruction as requested in this case, and we have found no case which in any way supports appellant's contention.

Aside from the question of whether the State's failure to call an endorsed witness may authorize an argument to the jury concerning an adverse inference, this is not a proper matter for an instruction by the court to the jury. Such an instruction would be a comment on the evidence, and would be comparable to instructions pertaining to an inference to be drawn from flight by the accused, but which, by reason of MAI–Cr 4.00, may not now be given.

The refusal of the requested instruction was proper.

The judgment is affirmed.

SMITH, C. J., and NORWIN D. HOUSER, Special Judge, concur.