STATE of Missouri, Respondent,

v.

Terry **WALTERS**, Appellant.

No. WD 38794.

Missouri Court of Appeals,
Western District.

July 21, 1987.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 1, 1987.

J. Russell Ford, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jeffrey Philip Dix, Asst. Atty. Gen., Jefferson City, for respondent.

Before LOWENSTEIN, P.J., PRITCHARD and TURNAGE, JJ.

TURNAGE, Judge.

Terry Walters was found guilty by a jury of arson in the second degree, § 569.050, RSMo 1978, and attempted stealing of over $150, § 564.011, RSMo 1978. On stipulation of the parties, sentencing was by the court instead of the jury. The court imposed sentences of five years on each count to run concurrently, but suspended execution and placed Walters on probation for five years.

Walters challenges the sufficiency of the evidence and the exclusion of evidence. Affirmed.

Walters operated Walters Meat Market, including a bakery and deli operation, in a leased building on Highway 350 in Raytown. At about 12:30 a.m. on August 5, 1984 the Raytown fire department answered an alarm at the market. On arrival the firemen found the market filled with smoke. On entering they discovered two fires, one near the front door and one near the center of the building. The front door had been propped open with a napkin holder used in the business. A gasoline can was discovered in the building with two holes punched in it to allow for the slow escape of gasoline. Near the center of the building a gas burner on the deep fryer was left on, but was not ignited. Near the burner was a book of matches and the ashes of a cigarette. The testimony was that this was a common delay ignition device, with the cigarette being placed near the matches, so that as the cigarette burned down it would ignite the matches. There was testimony that it would take from five to seven minutes for the cigarette to burn down to the matches.

There was evidence that the fire had been burning from 30 to 45 minutes by the time the firemen arrived.

The front door did not show any signs of forced entry, and in a sworn statement submitted as part of his proof of loss to an insurance company, Walters had stated that he was sure in his own mind that he had locked the front door when he left the building at about 8:00 p.m. on the evening before the fire. There was evidence that there were three keys; Walters and his wife had two of the keys and an employee had the other one.

The employee who had a key testified that he left the building at about 6:30 p.m. the evening before the fire and knew nothing of the fire until the next day.

The building was inspected by arson experts from the Raytown fire and police departments. They found that a screen above the deep fryer was removed, thereby opening the air shaft for direct flow of air. On the desk in the office investigators found about five metal "in" and "out" baskets, stacked by means of metal holders with several inches in between each basket. There were papers loosely stacked in most of the baskets, particularly the one on the top. Interspersed among the papers were newspapers. This stack of papers extended up to a circuit breaker. The metal door of the circuit breaker box was held open by the papers stacked on the top "out" box. One of the experts said that if the fire had reached those papers and had entered the circuit breaker box, it would have melted the plastic circuit breakers and would have made it more difficult to determine that the fire was incendiary in nature.

Investigators found a safe and two cash registers, which had not been touched. The cash registers still had change in them.

Walters arrived at the scene about 30 minutes after the firemen. He asked the fire chief whether his records had burned.

A patrolman who patrolled the area of the market about four to five times a week testified that Walters had two older trucks that were normally parked near the building. On the night before the fire he observed that the trucks were parked about 50–60 feet from the building. He stated that was the first time he had ever seen the trucks parked that far from the building.

The investigating officers testified that the inventory of the store appeared to be low and the small quantity of meat in the cooler was old and frozen solid. The officers stated that it did not appear to be good meat.

There was evidence that Walters had renewed an insurance policy with American Family Insurance Company on November 9, 1983 for one year. The policy covered real and personal property, and was in force at the time of the fire on August 5. Walters also carried worker's compensation insurance with American Family Insurance Company, but that coverage was cancelled June 30, 1984. Walters filed a proof-of-loss with American Family in which he claimed $65,278 for loss of personal property, $414 average profit per month, and $3,000 loss of salary for eight weeks. The American Family policy had been originally written on November 9, 1978 and renewed each year for a one year period. The worker's compensation insurance had been originally written on June 30, 1978 and had been renewed each year until it was cancelled on June 30, 1984.

On July 1, 1984 Walters purchased an insurance policy from Liberty Mutual Insurance Company insuring the contents of his market for $125,000. On the same day he had purchased worker's compensation insurance from Liberty Mutual, but the two policies were separate. After the fire Walters filed a proof-of-loss with Liberty Mutual claiming $65,278.60 loss. A representative from Liberty Mutual testified that it was unusual for an insured to have duplicate policies for the same coverage.

A bookkeeper who had worked for Walters testified that in March or April of 1984 he noticed that the income Walters reported on the forms he gave to the bookkeeper reported less income than was being deposited in the bank. The result was that Walters was under-reporting his sales to the state for sales tax purposes. The bookkeeper stated that a few days before the fire Walters inquired what would happen to his records if he had a fire. The bookkeeper stated that the records were normally kept in a file cabinet.

A CPA testified that he had examined Walters' business records and found that Walters had obligations that exceeded his available income. He stated the business showed a loss of $2170 for the year ended in July 1983 and that, although the year ended July 31, 1984 showed a profit, gross income was down by $84,000. He further stated that from March of 1983 to April of 1984 Walters had under-reported sales to the state for sales tax purposes by about 25%. He testified that in July of 1984 Walters had three insufficient funds checks returned on his personal bank account. He further testified that after an examination of Walters' 1984 tax return, it was his opinion that Walters did not have enough income to pay his obligations.

One of the arson investigators testified that an examination of the market revealed all of the classic indicators of an arson for profit fire, rather than a fire started by vandals. He stated the indicators were: the elaborate and intricate fire set-up with punctured gas can, the cigarette and matches near the deep fryer, and the removal of the vent to give the fire better ventilation. He stated that vandals who set fires do not think about giving ventilation to the fire. He also stated that the perpetrator had given attention to ventilation by placing the napkin holder to prop open the front door. He also stated in a back room of the building stacked plastic buckets had been placed on their sides on the floor; these appeared to be trailers to extend the fire into the far reaches of the building once it got started. He also stated another indication of arson for profit was the low inventory; often, arsonists-for-

profit remove items they want before setting the fire.

Walters first contends the evidence was insufficient to prove that he set the fire. In viewing the evidence in the face of a challenge to the sufficiency, this court considers the facts and all favorable inferences to be drawn therefrom in the light most favorable to the state and rejects all contrary evidence and inferences. *State v. Clark,* 652 S.W.2d 123, 124 (Mo. banc 1983). It is also settled that the guilty agency of the accused in arson may be established by circumstantial evidence. *State v. Parker,* 543 S.W.2d 236, 242 (Mo. App.1976). In a circumstantial evidence case the facts and circumstances relied upon to establish guilt must be inconsistent and irreconcilable with a hypothesis of defendant's innocence. The circumstances need only exclude a reasonable hypothesis of the defendant's innocence. *State v. Easley,* 662 S.W.2d 248, 250[1] (Mo. banc 1983).

Walters concedes that the fire was of incendiary origin, but claims insufficiency of the evidence to prove his guilt. He relies upon the fact that the evidence was that he left the building at 8:00 p.m. and was not seen there until about 30 minutes after the firemen had arrived. He contends that since there was no evidence that he was on the premises at the time that the fire was set, there is no evidence to prove his connection with the fire. Walters contends in order to prove his guilt the state must produce evidence which would place him at the scene at about the time the evidence reveals the fire was set.

Walters overlooks the fact that the proof of his being the incendiary may be established by circumstantial evidence. *State v. Dworkin,* 307 Mo. 487, 271 S.W. 477 (Mo. 1925), involved a fire of incendiary origin. There was no evidence that the defendant was near his building at the time the fire was set. The court held that the defendant was the only one who had the opportunity and the motive to set the fire. There was also evidence that insurance on the property was far above the property's value. The court held that these facts were inconsistent with the defendant's innocence and consistent with his guilt. While there were some facts in *Dworkin* which are not present here, those facts do not abate *Dworkin's* relevance to this case. On the other hand there is evidence against Walters that was not present in *Dworkin.* In this case Walters testified that he knew of no one who would have any reason to set fire to his business. On the contrary there were several reasons which would establish a motive on the part of Walters: the classic indicators of an arson for profit fire were present; the property was doubly insured; and Walters was in financial trouble, with his obligations exceeding his income. Further, he had been under-reporting his sales for sales tax purposes and inquired of his bookkeeper what would happen to his records in the event of a fire. In addition, he had written three insufficient funds checks in the month prior to the fire.

As in *Dworkin* Walters was the only one with the opportunity and the motive to set the fire. The motive has been outlined and the opportunity would have been available only to someone with a key to the building, because there was no evidence that entry had been forced and Walters had stated that he was satisfied that he had locked the front door prior to the entry. Evidence of opportunity and a financial motive to commit arson aid in finding a defendant's guilt. *State v. DuBose,* 617 S.W.2d 509, 513[5, 6] (Mo.App.1981). This court finds the facts and the inferences drawn therefrom to be consistent with Walters' guilt and inconsistent with any reasonable hypothesis of his innocence. The evidence was sufficient to support the jury verdict.

Walters also contends the court erred in refusing to admit evidence that some months before the fire in his business, there were two arson fires in cars on the parking lot near his business. There was no evidence of any connection between those fires and the fire in Walters' business. Walters' counsel stated that he offered the evidence of those fires to show that crimes do happen and that not necessarily every business owner who is faced with financial hardship burns his building.

The court excluded the evidence as being irrelevant. Questions of relevancy are left to the discretion of the trial court, and its ruling will be disturbed only on a showing of an abuse of that discretion. *State v. Wood,* 596 S.W.2d 394, 402[19, 20] (Mo. banc), *cert. denied,* 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980). Walters showed no connection between the car fires and the fire in his market. The reasons assigned by counsel fail to show any way in which the car fires evidence was relevant. The evidence of the car fires completely fails the tests that such evidence must logically tend to prove or disprove a fact in issue or to corroborate evidence which itself is relevant to the principal issue. *Id.* The court correctly excluded the evidence of the car fires.

The judgment is affirmed.