STATE of Missouri, Plaintiff-Respondent,

v.

James Donald WALSH, Defendant-Appellant.

No. 42316.

Missouri Court of Appeals, Eastern District, Division One.

Nov. 3, 1981.

---

Gerald H. Johnson, Cape Girardeau, for defendant-appellant.

John Ashcroft, Atty. Gen., Jan Bond, Asst. Atty. Gen., Jefferson City, Stephen N. Limbaugh, Jr., Pros. Atty., Jackson, for plaintiff-respondent.

STEPHAN, Presiding Judge.

Defendant appeals from a jury conviction of arson in the second degree, § 569.050, RSMo 1978, and from judgment sentencing him to two years' imprisonment, albeit placing him on probation for a period of five years on condition that he serve sixty days in the county jail and fulfill other conditions. We affirm.

At 4:56 a. m. on June 12, 1979, fire was reported at Fashion House, Inc. in Cape Girardeau, Missouri. Fashion House, Inc. was a retail clothing store owned and operated by defendant Donald Walsh and his sister Naydean Walsh. Although the fire was extinguished in a few minutes, the entire contents of the store were damaged by heat and smoke.

On June 11, 1979, Naydean Walsh had been personally served with a final notice by Missouri Utilities Company that electricity would be discontinued to Fashion House on June 12, 1979, if an overdue balance of $666.92 was not paid immediately. No payment was made. That same day an order for a Writ of Replevin was entered by the United States District Court, Eastern Division at St. Louis, Missouri, instructing the marshal to take possession of the goods of Fashion House, Inc. which secured the store's Small Business Administration (SBA) loan. The SBA had taken an assignment of the security note held by First National Bank of Cape Girardeau and had also purchased the loan from the bank when the $50,000 loan became delinquent. Defendant was personally liable on the note. In addition, the state sales tax owed by the

store to the State of Missouri was in default and the store had been notified by the Missouri Department of Revenue that its sales license would be revoked. The retail goods of the store were covered by a "contents" insurance policy in effect on the date of the fire and having limits of $70,000.

Officer Glayne Light of the Cape Girardeau Police Department was patrolling the downtown area at approximately 4:20 a. m. on June 12, 1979, when he saw defendant's automobile parked in front of Fashion House. He looked into the store from his patrol car but he did not see defendant, flames, smoke or any signs of forced entry. Thirty-six minutes later the fire was reported.

Defendant and his sister were notified of the fire and arrived at the store around 6:30 a. m. At that time Fire Chief Charles Mills asked defendant when he had last been in the store, and defendant said he was there at 9:30 p. m. on the night of June 11, 1979. When Chief Mills said that defendant's automobile was seen in front of the store, defendant said that he had stopped at the store on his way back from a drinking establishment in Illinois, and had gone inside the store but not to the rear area. Shortly thereafter at police headquarters defendant told Cape Girardeau Detective B. J. Lincecum that he had arrived at the store at 11:00 p. m. to see if his sister was there. When he discovered she was gone, he drove to a drinking establishment in Illinois where he remained until 3:45 a. m. He then returned the short distance to the Fashion House, parked his automobile and went into the front of the store. He stated he did not go in the rear area of the store. On June 13, 1979, Douglas Stevens, an insurance adjuster, visited Fashion House to investigate the loss and spoke with defendant. Defendant mentioned he had last been at the store at 5:00 p. m. on June 11. Mr. Stevens walked down the street to conduct other business. On his return to Fashion

House defendant approached Mr. Stevens to say he had also been at the store at 11:00 p. m. and at 4:00 a. m. to use the restroom.

Fire Chief Charles Mills testified that he inspected the store after the fire was extinguished. He determined that the fire started in a trash pile three feet high, three feet wide and twelve feet long at the store's rear wall. He stated the fire did not start from natural or accidental causes; there was no evidence of explosion or the presence of inflammable liquids, and the circuit breakers were intact. The electrical wiring was damaged from external heat but not internally from a short circuit. There was no lightning that evening. Chief Mills concluded the fire was incendiary, burned rapidly and hot. It was not a smoldering fire caused by a cigarette or by contact with a light bulb. Larry Linnemeyer, special investigator from the state fire marshal's office, confirmed this conclusion when asked his expert opinion based on a hypothetical question.

■ Defendant first contends that the trial court erred in denying his motion for judgment of acquittal at the close of the state's case and at the close of all the evidence because the state failed to prove that the fire was caused by the criminal agency of defendant.[1] Defendant concedes that the state may prove this element of the offense by means of circumstantial evidence, but argues that the circumstantial evidence offered by the state in this case tended to prove only motive and opportunity to commit the crime. Relying on *State v. Odum*, 351 S.W.2d 10, 15[3] (Mo.1961), he argues that the state failed to present evidence, either direct or circumstantial, pointing to the conclusion that defendant intentionally started the fire. We disagree.

■ At the outset of our analysis, we emphasize that which defendant apparently would concede. Any element of a crime

---

1. Defendant recognizes the traditional analysis of the elements of arson. The state must prove: (1) that a building was on fire; (2) that the fire was of incendiary origin; and (3) that defendant participated in the commission of the

crime. See *State v. Dubose*, 617 S.W.2d 509, 511[2] (Mo.App.1981) and cases cited therein. Defendant limits his attack on the sufficiency of the evidence to the third element.

may be established by circumstantial evidence, *State v. McGee*, 592 S.W.2d 886, 887 (Mo.App.1980), and this often becomes a practical necessity in a prosecution for arson. As this court recently noted, "Arson is a crime usually committed in stealth and seldom in the view of witnesses and, hence, guilt must ordinarily be proven by circumstantial evidence. The incendiary origin of a fire and the guilty agency of the accused may be established by circumstantial evidence." *State v. Simpson*, 606 S.W.2d 514, 518 (Mo.App.1980), citing *State v. Parker*, 543 S.W.2d 236, 241–242 (Mo.App.1976). See also *State v. Jackson*, 267 S.W. 855, 857[3] (Mo.1924).

■ The circumstantial evidence that defendant was the incendiary was more than adequate to make a submissible case. The fire was reported at 4:56 a. m. and defendant admitted his presence at the store at 4:00 a. m. after being confronted with the fact that a police officer on patrol saw his automobile parked in front of the store. The store had only one entrance; only defendant and Naydean had keys. This door was locked when firemen arrived. There was evidence the fire did not result from defective wiring or from lightning. The fire, which originated in a trash pile in the rear of the store, was hot and burned rapidly. It was not a smoldering fire which had burned slowly for several hours. In addition, Naydean testified the trash was contained in bags when she left the store at closing time but it was not in bags when the fire was discovered. See, e.g., *State v. Parker*, supra, at 242. Defendant's contradictory statements concerning his presence at the store add force to the circumstantial evidence of his guilt.

In the *Odum* case, relied on by defendant, there was no evidence, circumstantial or direct, placing the arson defendant at the scene of the fire during the time it was likely to have been set. Here, defendant's own testimony places him at the scene at the crucial time, and there is an abundance ˙

of other circumstantial evidence pointing to him as the incendiary. The trial court was correct in allowing the case to go to the jury. We rule the point against defendant.

Defendant's second point contends the trial court erred in overruling his objection to the opinion testimony of Fire Chief Mills regarding the cause of the fire. He argues, in effect, that the cause of the fire was not the proper subject for opinion testimony because the facts surrounding the cause of this fire were so basic and uncomplicated that no opinion testimony was needed.

■ Defendant's trial objection and the allegation in his motion for new trial stated that Chief Mills' opinion testimony invaded the province of the jury and was not based on sufficient facts. His point on appeal is completely different. A defendant may not change or broaden his assertion of error and is limited to the grounds stated to the trial court. *State v. Lenza*, 582 S.W.2d 703, 710 (Mo.App.1979), *cert. denied*, 444 U.S. 1021, 100 S.Ct. 678, 62 L.Ed.2d 652 (1980). A point on appeal which is not based on the theory of the objection at trial is not preserved for review. *State v. Kuhrts*, 571 S.W.2d 709, 712 (Mo.App.1978).[2] Defendant has not preserved this point.

Defendant's third and fourth assignments of error concern the testimony of Chief Mills and Larry Linnemeyer, a special investigator for the Missouri State Fire Marshall's office and an expert in arson investigations. Mr. Linnemeyer had not inspected the premises but answered a hypothetical question based on facts adduced from Chief Mills with the opinion that the fire was of incendiary origin, that it was a hot, rapidly burning fire and not a smoldering one of the type caused by a light bulb making contact with the trash. One of the facts hypothesized was that Chief Mills had examined the entire electrical system; however, it appeared during the course of Chief Mills' cross-examination that he had not examined the wiring of one light bulb re-

2. We decline to apply the plain error doctrine because the admission or exclusion of opinion testimony is within the discretion of the trial

court, *State v. Curtis*, 573 S.W.2d 416, 419[6] (Mo.App.1978), and there is no abuse of discretion shown here.

ceptacle containing a bulb over the trash. In view of Mr. Linnemeyer's opinion that this was not the kind of fire that would have resulted from contact between a lighted bulb and the trash, the erroneous inclusion of this fact was not prejudicial to the defendant. This for the reason that defendant's theory of defense in this regard (that contact started the fire) was refuted by Linnemeyer's opinion that the fire was incendiary and not accidental in nature.

▇▇▇ The trial court did not err in overruling defendant's objection to the hypothetical question including the erroneous assumption for the foregoing reason and the underlying reason that a hypothetical question need not posit the entire body of evidence on a particular point. *Huffman v. Terminal Railroad Association of St. Louis,* 281 S.W.2d 863, 870 (Mo.1955); *Depper v. Nakada,* 558 S.W.2d 192, 198[6] (Mo.App. 1977). It would follow that the converse is equally true: the inclusion of a fact, whether or not supported by evidence, is harmless error where it is not a factor in the formation of the opinion expressed. Defendant's third point is ruled against him.

The effect of the erroneous assumption that Chief Mills had inspected all electrical connections when in fact he had overlooked one receptacle is further ameliorated by the facts surrounding defendant's fourth and final point. At the end of the state's case but before the prosecution rested, the state filed a motion to permit Chief Mills to inspect the premises so that he could examine the overlooked receptacle and wiring. The motion was granted over defendant's objection and the inspection took place. Chief Mills then testified about his findings and concluded that the light receptacle and related wiring had not been the subject of a short circuit. Defendant did not object to Chief Mills' testimony on this matter and, in fact, cross-examined him. Defendant was given an opportunity to recall Mr. Linnemeyer in the event the inspection and subsequent testimony of Chief Mills elicited new facts. He did not recall Mr. Linnemeyer because no new facts were revealed. The language of Rule 25.31 (now 25.02),

upon which defendant relies, gives the trial court discretion to control the time of discovery by allowing the court to shorten or to enlarge the time. There was no abuse of discretion here.

▇▇▇ Defendant argues that, in granting the motion, the trial court improperly allowed the state to "rehabilitate" Chief Mills' testimony to the defendant's prejudice, citing only Rule 25.31 as authority. In this we think defendant misconceives the concept of testimonial rehabilitation. Rehabilitation is an opportunity to counter impeachment of a witness. See McCormick, Handbook of the Law of Evidence, § 49 at 102 (1972). The testimony that Chief Mills failed to examine the light receptacle was not erroneous or falsified testimony, nor was it inconsistent with any other evidence offered by him. Thus, there was no initial impeachment of Chief Mills and, consequently, no subsequent rehabilitation. Defendant was not prejudiced by the alleged rehabilitation of witness Mills because no rehabilitation occurred.

Rather, we agree with the statement of the learned trial judge, in a conference out of the hearing of the jury, that the granting of the motion would aid in "searching for the truth," the basic purpose of the trial, and with his observation that it was possible that the inspection could reveal matters helpful to the defense.

Judgment affirmed.

DOWD and STEWART, JJ., concur.