**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Robert CRAVEN, Defendant-Appellant.**

No. 12793.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 17, 1983.

Motion for Rehearing or to Transfer
Denied Sept. 7, 1983.

Application to Transfer Denied
Oct. 18, 1983.

Debra S. Hans, Asst. Public Defender, Springfield, for defendant-appellant.

John Ashcroft, Atty. Gen., Melinda A. Corbin, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

FLANIGAN, Presiding Judge.

A jury found defendant guilty of arson in the second degree, § 569.050,[1] and he was sentenced to five years' imprisonment. Defendant appeals.

Defendant's first point is that the evidence was insufficient to support the verdict and that the trial court erred in overruling defendant's motion for judgment of acquittal filed at the close of all the evidence. In ruling the issue of the sufficiency of the evidence this court must "consider the facts in evidence and all favorable inferences to be drawn therefrom, in the light most favorable to the State, and reject all contrary evidence and inferences." *State v. Clark,* 652 S.W.2d 123, 124 (Mo. banc 1983).

"A person commits the crime of arson in the second degree when he knowingly damages a building or inhabitable structure by starting a fire or causing an explosion."[2] § 569.050. "In order to make a submissible case on a charge of arson, the state must prove: 1) a building was on fire; 2) the fire was of incendiary origin; 3) defendant participated in the commission of the crime." *State v. DuBose,* 617 S.W.2d 509, 511 (Mo. App.1981).

Harice Christian, a Branson police officer, was on routine patrol at 4:30 a.m. on July 22, 1981, about five blocks from the Sammy Lane Boat Dock. He noticed "fire and flames jumping up in the air in the direction of the boat dock." He proceeded to the scene of the fire and the fire department arrived there five or six minutes later. Rex Asseline, owner of the boat dock, testified that as a result of the fire the "whole south half of the dock was almost totally destroyed. We lost one Lane excursion boat, a fishing boat, a pontoon boat, a cabin cruiser, ten motors . . . quite a bit of extensive damage." The dock included an office which was the "principal business office" for the Sammy Lane Boat Line. Asseline testified that he had not given permission for the fire to be set.

William Zieres, an investigator for the Missouri State Fire Marshal's office, in-

1. All references to statutes are to RSMo 1978, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

2. Defendant makes no contention that the fire-damaged property involved here did not constitute "a building or inhabitable structure." The definition of "inhabitable structure" contained in § 569.010(2) includes "a ship . . . or structure: (a) where any person lives or carries on business. . . ." Section 569.010(2)(c) reads: "Any such . . . structure is 'inhabitable' regardless of whether a person is actually present."

spected the scene of the fire at about 8 a.m. on July 22. Zieres found a burn pattern on the dock flooring. The pattern was "in the shape and of the type which would normally be found where a poured flammable liquid burned." Zieres, whose qualifications as an expert in the field of arson investigation have not been challenged by defendant, testified, without objection, "there could be no other cause for this type pattern other than a deliberate setting."

On one of the boats which was not burned Zieres found "a bunch of firecrackers and the remains of a cigarette ash under the firecrackers." The firecracker-cigarette combination can be used as a "delay device" for the setting of a fire.

There was testimony by a state's witness that the carpet on one of the boats contained "petrol distillate consistent with gasoline." Starr Pugh testified that at 4:30 a.m. she saw defendant "walking toward the lake—in the direction of the Sammy Lane Boat Dock." She also testified that at the preliminary hearing, where defendant "conducted his own defense," defendant "admitted to me he had been down at the boat dock at the time I saw him."

Michael Colburn and Charles Mallonee were at the Farmhouse Cafe, which was located about half a mile from the boat dock. At about 5:10 a.m. defendant came in the cafe and told Mallonee he wanted to talk to him outside. Mallonee and defendant went outside and had a conversation. Then the three men went to the boat dock. According to Colburn defendant said "he had been there earlier—at the time the boat dock was burning." Mallonee testified that when he stepped outside with defendant, defendant said, "Did you see that neat little fire I set?" Mallonee said, "Yeah, did you do that?" Defendant said, "Yeah." According to Mallonee defendant also said that he had been at the dock before the fire started and was there "before the fire trucks arrived."

State's witness Kim Herron testified that she worked at the Ozark Family Steakhouse where defendant also worked. On the afternoon of the day of the fire the witness "was reading the paper, reading about Sammy Lane burning down, and defendant told me that he did it. I said 'no, you didn't do that' and he kept telling me that he did and he appeared serious. We talked about it for probably 15 minutes."

This court holds that the foregoing evidence was sufficient to support the conviction. Defendant's first point has no merit.

■ Defendant's second point is that the trial court erred in denying defendant's request for the giving of MAI–CR2d 2.26, which is entitled "Arson: Accident, Carelessness or Natural Cause." A similar complaint was made in *State v. Thomas*, 526 S.W.2d 893 (Mo.App.1975). There the court held that it was not necessary to give the instruction where there was no evidence to support it. The court said, "the evidence, completely undisputed, was that the fire was deliberately set." Such is the situation here. Defendant argues that the instruction should have been given because there was evidence "that it was raining the morning of the fire,' and that evidence, says defendant, supports a reasonable inference "that the fire could have started by a lightning bolt." Defendant further argues that because the burning involved a boat dock, it was a reasonable inference "that the boat line has gasoline on the premises and therefore the fire could have been started by accident or carelessness."

The record is devoid of any evidence that there was any lightning on the morning of the fire. Although there was evidence that gasoline was involved in the fire, the state's evidence was clearly to the effect that the fire was intentionally set and there was no evidence to the contrary. Defendant's second point has no merit.

■ Defendant's third point is that the trial court erred in permitting the state to amend the information three days before the trial, by changing the date of the offense from July 23, 1981 to July 22, 1981. The record shows that defense counsel, two months before the trial, had suggested to the prosecutor that the information be amended so as to show the correct date.

On the morning of the trial the court said to defense counsel, "Do you object to the filing of it [the amended information] and to proceeding based on the amended information?" Counsel's response was, "Your Honor, I do not object to the filing of the amended petition [sic] and, like I said, whether or not we proceed on the original petition or the amended petition, I'll leave that up to the ruling of the court." The court then permitted the amendment. Later defense counsel said, "Just for the record I would like to object to proceeding on the first amended petition."

The record demonstrates that defense counsel initially had no objection to the amendment and later changed his mind. Rule 23.08 permits the amendment of an information at any time before verdict, "if no additional or different offense is charged and if a defendant's substantial rights are not thereby prejudiced." That rule further provides that no such amendment shall cause delay of a trial unless the court finds that a defendant needs further time to prepare his defense by reason of the amendment.

At the trial the defendant produced two witnesses who testified that defendant was in their presence at the Farmhouse Cafe for approximately one hour before "the fire trucks went by" on their way to the fire. The state's evidence tended to show that the fire was ignited some time during that hour. Defendant's brief describes his defense as "one of alibi." The amendment did not prejudice that defense. The jury rejected the defense but all of the witnesses agreed on the date when the fire took place.

In *State v. Snyder,* 502 S.W.2d 339 (Mo. 1973), the trial court permitted the state to amend the information after the state had rested. The amendment changed the date of the offense from April 9, 1970 to April 8, 1970. In upholding the trial court's ruling the supreme court said, "The date was not the essence of the offense, and no additional or different offense was charged by the amendment, and appellant could not have

been prejudiced by the amendment." Defendant's third point has no merit.

Defendant's fourth point is a restatement of his third point and is similarly lacking in merit.

■ Defendant's fifth point is that the trial court erred in overruling defendant's pretrial motion to suppress evidence of state's witness Starr Pugh concerning her identification of defendant for the reason that her out-of-court identification was "impermissibly suggestive" and tainted her in-court identification of defendant.

Defendant's pretrial motion sought an order suppressing "any out-of-court or in-court identification of defendant by Starr Pugh." The motion did not set forth any reasons or grounds for suppressing the challenged evidence. "A motion to suppress which merely states conclusions and not facts presents nothing for the trial court to consider and preserves nothing for appellate review." *State v. Upshaw,* 619 S.W.2d 925, 927 (Mo.App.1981). See also Rule 24.-04(b)(2). At the hearing on the motion defense counsel stated no grounds for his objection to the challenged evidence.

A charitable view of defendant's brief, and particularly its argument portion, indicates that what defendant is really complaining about is the trial court's action in admitting into evidence Starr Pugh's in-court identification of defendant. That in-court identification should not have been admitted, argues the brief, for the reason that it was tainted by an "impermissibly suggestive out-of-court identification" of defendant by the witness. At the trial defendant made no objection to Starr Pugh's in-court identification.

In spite of the foregoing procedural deficiencies this court has examined the record with respect to Starr Pugh's in-court identification and holds that it was admissible. Even if it be assumed, as defendant strenuously argues, that the out-of-court identification was made under "impermissibly suggestive circumstances,"[3] it does not neces-

3. At the pretrial hearing on the motion to suppress, Starr Pugh testified that the "next night" after the fire a man from the fire marshal's office, "possibly" Bill Zieres, asked her to make

sarily follow that the court erred in permitting the in-court identification.

"The central issue in identification questions is reliability.... Had the out-of-court identification procedures in this case been deemed suggestive, they still would not invalidate a reliable in-court identification.... An in-court identification which is based on a recollection independent of the pretrial identification will be deemed proper." *State v. Kirk,* 636 S.W.2d 952, 955[8–9] (Mo.1982).

"In determining reliability [of an in-court identification], the court looks at the 'totality of the circumstances,' including the opportunity of the witness to view the criminal at the time of the crime; the witness's degree of attention; the accuracy of the witness's prior description of the criminal; the level of certainty demonstrated by the witness at the confrontation; and the length of time between the crime and the confrontation." *State v. Robinson,* 641 S.W.2d 423 (Mo. banc 1982).

At the trial Starr Pugh, a witness for the state, testified that on the morning of the fire she was sitting on a couch in the lobby of the White River Hotel. She was about two feet from the window, facing the street. It had been raining. The street lights were lit and it was "pretty bright." She saw a person walking by, three feet from the window, and she described his appearance and his clothing. She had seen the person before. He was walking toward the lake in the direction of the Sammy Lane Boat Dock. This occurred at 4:30 a.m. The witness identified the person as the defendant.

On cross-examination the witness testified that she was five feet from the person who walked by the hotel and that she saw his profile for approximately five seconds. On redirect examination the prosecutor asked the witness if there was "any particular reason that you knew the young man that you saw." The witness replied, "On

my way to work I have seen him up by the Farmhouse Restaurant, somewhere up on Main Street; also his girl friend worked at the Roadway Inn as a maid. The Roadway is connected with the restaurant where I worked and I served them dinner one time.... I sat down and talked with them a little bit."

Starr Pugh had the opportunity to view defendant as he was walking by the hotel toward the boat dock. Lighting conditions were good and she was only five feet from him. The record shows that the witness's degree of attention was high. The witness gave an accurate description of the defendant and his attire. The witness was positive in her identification. Significantly, the witness was previously acquainted with the defendant and many courts have considered prior acquaintance as a factor of reliability. See Sobel, Eyewitness Identification, Second Edition, § 6.4, p. 6–12. This court holds that the in-court identification was reliable. Defendant's fifth point has no merit.

Defendant's sixth point is that the trial court erred in limiting defense counsel's cross-examination of state's witness Charles Mallonee. These are the questions which defense counsel, by a ruling made in a conference outside the hearing of the jury, was not permitted to pose to the witness: (1) "Has there been a petition filed against you in the juvenile court for the crime against the State of Missouri of which is stealing?" (2) "Have you been questioned by authorities for the alleged suicidal hanging of a friend of yours?"

Defendant argues that the ruling of the court "denied defendant's right of effective cross-examination because counsel was seeking to show the existence of possible bias *on the part of Michael Colburn.*" Defendant says that "a positive answer to the proposed questions would demonstrate the possible concern of Michael Colburn that he might be a suspect in the arson investiga-

an identification of some person at the police station. Mr. Zieres escorted her there. She looked through a window into a room and identified defendant as being the person she

had seen walking by the hotel. Only defendant and a uniformed officer were present in the room.

tion." The two questions dealt with whether a petition had been filed against Charles Mallonee, not Michael Colburn, and whether Mallonee, not Colburn, had been questioned by authorities. Even if it be assumed that the brief intended to argue that the questions sought to show the existence of a possible bias on the part of Mallonee, defendant's contention has no merit.

In *State v. Russell,* 625 S.W.2d 138 (Mo. banc 1981), the court, in the wake of *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), dealt with the general subject of cross-examination of a juvenile, testifying for the state in a criminal case, with regard to his "adjudication" in juvenile court. In *Russell* the court held that cross-examination of a juvenile is proper within limitations, and that, "as with any witness," the latitude and extent of cross-examination on collateral issues to show specific misconduct for purposes of impeachment is initially a determination to be made by the trial court and its ruling will be set aside only on an affirmative showing of an abuse of discretion.

"It has long been recognized that the credibility of a witness may not be attacked by evidence of an arrest, investigation or criminal charge which did not result in her conviction. *State v. Kalna,* 595 S.W.2d 299, 300 (Mo.App.1979). "It would be error to ask a witness if he had been arrested for or charged with a crime or in jail awaiting trial on a pending charge." *State v. Lockhart,* 507 S.W.2d 395, 396[2] (Mo.1974). The court, in *Lockhart,* pointed out that "an exception to the rule has been noted where the inquiry shows a specific interest of the witness . . . or where it shows a possible motivation of the witness to testify favorably for the government . . . or where it shows the testimony of the government witness was given in expectation of leniency."

During the cross-examination of Mallonee by defense counsel the witness gave the following testimony: "I am on probation at this time as a result of having a petition filed in the juvenile court and then I was adjudicated for violating the criminal laws of the State of Missouri dealing with stealing. I have not been promised anything in return for my testimony."

■ With regard to the first question sought to be posed to the witness, it is unnecessary to decide whether its awkward wording justified the trial court's ruling. It is sufficient to say that the testimony which was elicited on cross-examination supplied the information sought by the first question. It is accordingly unnecessary to rule on the propriety of the question itself.

■ The second question inquired whether the witness had been "questioned" during the course of the investigation of a collateral event. The mere fact that the witness might have been so questioned is not alone a ground for impeachment. Defendant has not demonstrated how the inquiry would show a specific interest of Mallonee or a possible motive on his part to testify favorably for the state. Defendant's sixth point has no merit.

■ Defendant's seventh point is that the trial court erred in limiting defense counsel's cross-examination of state's witness Michael Colburn. These are the questions which defense counsel was not permitted to pose to Colburn: (1) "Did you know that Charles Mallonee has had a petition filed in the juvenile court for which the crime against the State of Missouri is stealing?" (2) "Did you know that Charles Mallonee had been questioned by the authorities for the alleged suicidal hanging of a friend of Mallonee?"

Defendant says, "A positive answer to the proposed questions would demonstrate the possible concern of Michael Colburn that he might be a suspect in the arson investigation." For the reasons stated in the discussion of defendant's sixth point with reference to the ruling on the first question sought to be propounded to Mallonee, there was no prejudicial error in refusing to permit the first question to be posed to Colburn.

The second question sought to be propounded to Colburn is akin to the second question sought to be propounded to Mallo-

nee. Defendant has not demonstrated that an affirmative answer—to the effect that Mallonee was being questioned in connection with a suicide—would show a possible motivation on the part of Colburn to testify favorably for the government or to show a specific interest of Colburn. Defendant's seventh point has no merit.

The judgment is affirmed.

GREENE, C.J., and TITUS and CROW, JJ., concur.