**STATE of Missouri, Plaintiff–Respondent,**

v.

**Thomas HENDRICKSON, Defendant–Appellant.**

**No. 17001.**

Missouri Court of Appeals, Southern District, Division Two.

July 23, 1991.

Motion for Rehearing and/or to Transfer Denied Aug. 14, 1991.

---

Willard B. Bunch, John Edward Cash, Kansas City, for defendant-appellant.

William L. Webster, Atty. Gen., Joan F. Gummels, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

FLANIGAN, Chief Judge.

A jury found defendant Thomas Hendrickson guilty of arson in the second degree, § 569.050,[1] and he was sentenced to three years' imprisonment. Defendant appeals.

Defendant's sole point is that the evidence was insufficient to support the verdict and that the trial court erred in overruling his motion for judgment of acquittal filed at the close of all the evidence.

Defendant's challenge to the sufficiency of the evidence requires this court to determine whether there is sufficient evidence from which a reasonable juror might have found him guilty beyond a reasonable doubt. *State v. Dulany,* 781 S.W.2d 52, 55[3] (Mo. banc 1989). We accept as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence, and disregard all evidence and inferences to the contrary. *Id.* This court considers any portions of defendant's evidence which would support a finding of guilty "because defendant, by putting on evidence, takes the chance of aiding the State's case." *State v. Johnson,* 447 S.W.2d 285, 287[2] (Mo.1969).

"A person commits the crime of arson in the second degree when he knowingly damages a building or inhabitable structure by starting a fire or causing an explosion." § 569.050. In order to make a submissible case on a charge of arson, by fire, the state must prove: (1) a building was on fire; (2) the fire was of incendiary origin; (3) defendant participated in the commission of the crime. *State v. Craven,* 657 S.W.2d 357 (Mo.App.1983); *State v. DuBose,* 617 S.W.2d 509, 511 (Mo.App.1981).

In addition to its formal parts, the information charged that on October 3, 1989, in St. Clair County, the defendant "knowingly

---

**1.** All references to statutes are to RSMo 1986, V.A.M.S.

damaged an inhabitable structure consisting of a house owned by [defendant and his wife] located at Main Street, Collins, Missouri, and the defendant did so by starting a fire; and the defendant acted alone or together with Ed Jarvis as aforesaid."

The state's witnesses included Lonna Burlingame, deputy sheriff Mark Moore, arson expert James Wilson, and motel owner Kenneth Breshears.

Lonna Burlingame testified that on October 3, 1989, in the evening, she was at the house of Ed Jarvis, which is next door to defendant's house in Collins. Ed Jarvis, defendant, and defendant's 13–year–old son Timmy, were there. The front door of defendant's house was open and Lonna saw that inside that house the television was on and the stove was burning.

Lonna then drove to another house about a block from defendant's house to pick up her husband, and she saw that the Hendrickson house was on fire. She notified the fire department and went to the Hendrickson house. She told a police officer that the fire might have been set by defendant or Ed Jarvis.[2] She did that because on Labor Day she was at a bar, The Other Office, and defendant, who had been drinking, asked her "if she couldn't help him set his place on fire." She testified: "I told him no, I would not."

Deputy Sheriff Moore testified that at 8:30 p.m. on October 3 he saw the Hendrickson house engulfed in flames. The fire trucks were already there. Moore called the state fire marshal and "secured the scene" until investigator Wilson of the fire marshal's office arrived.

Defendant arrived at the house about midnight or 12:30 a.m., accompanied by Jarvis, Jarvis' 2–year–old son, and defendant's son Timmy. Defendant told Moore that defendant's wife was at the Weaubleau Motel with his children. Moore said he gave defendant the Miranda warnings at the scene.

Accompanied by investigator Wilson, Moore went to the Weaubleau Motel at 1:30

a.m. or 2 a.m. The officers knocked on the door of Room 2, which motel owner Breshears had earlier that night rented to defendant's wife. No one answered the knock. The key was in the door. The officers entered the motel room. No one was there and no personal effects were in the room. The officers locked the room and gave the key to Breshears. They returned to the sheriff's office. Later Moore was informed that "the party had arrived back at the Weaubleau Motel."

Moore returned to the Weaubleau Motel. Defendant's blue Ford station wagon was parked in front of Room 2. The station wagon had no personal belongings in it. Moore learned that another room had been rented at the Preston Motel.

On the morning of October 4, pursuant to a search warrant, Moore and other officers found several bags of defendant's clothing, personal items, photo albums, and defendant's diploma in Room 6 at the Preston Motel. Moore also testified that on October 4 he looked through the rubble at the scene of the fire and found no remnants of a television set. On cross-examination, he testified that he believed defendant had set the fire, "that was my suspicion."

Breshears testified that he owned and managed the Weaubleau Motel and that on October 3, at 9 p.m., defendant's wife rented Room 2. She "registered under the name of Larsen and gave a Jefferson City address." Breshears said she had a station wagon full of belongings and had three children with her. "They" said they were traveling.

Wilson testified that he was an investigator for the Missouri State Fire Marshal's office, a certified arson investigator, and a graduate of the National Fire Academy. On the night of the fire, he went to the scene and investigated. The fire started, he said, in the northeast corner of the living room. He testified, without objection, that he determined that the fire was incendiary in origin and that he had eliminated accidental causes and natural causes.

---

**2.** On this appeal, defendant has not challenged the admissibility of any of the evidence. Some

of it, which might have been objectionable, was adduced by the defense.

He described at length the conditions he found at the scene.

Roger Inman testified that he lived about a block from the Hendrickson house and that the fire commenced between 8 and 8:30 p.m.

Through other witnesses, the state showed that defendant had been employed at a hospital in Springfield and resigned on September 30, 1989. On the day of the fire, defendant's house was insured for $6,000 and its contents for $2,000. The fire insurance policy was due to expire on October 31, 1989. The house was mortgaged and the balance due on the mortgage, on the date of the fire, was $1,443.77. The mortgage payment due on September 1, 1989, had not been paid, but defendant made two monthly payments on October 2, 1989.

Defendant called his wife and himself as defense witnesses.

Debra Hendrickson, defendant's wife, testified that at 3 p.m. on October 3, she left their house with her son Tommy, 16, and her daughters Candy 11 and Crystal 6. She had removed some items from the house, including photo albums, clothes, a box of dishes, and Christmas ornaments. Defendant's Ford station wagon was "pretty well full" of the items.

She testified that she registered at the Weaubleau Motel about 7:45 or 8 p.m., using her maiden name, Larsen. She also gave a Jefferson City address "because I thought it would be silly going to a motel saying you live right next door." She testified that she remained at the Weaubleau Motel until defendant arrived "early in the morning" and told her that the house burned down. The following testimony was then elicited by defense counsel:

"Q. And what happened then?

A. And then he was telling me what had happened that he was getting blamed for it. This one officer was blaming him for it and then he got kind of scared with all the stuff in there, so he wanted to put it in another motel and I told him, I said, 'Well, we didn't have anything to hide.'

Q. And then what happened?

A. We put it in another motel.

Q. Where at?

A. Preston, I think it was.

Q. Did you go along on that trip?

A. Yeah."

She testified that "at Preston we left the stuff that had been in our car." She said that they then returned to the Weaubleau Motel and "we all went to bed." Officer Moore arrived and started "questioning us." Defendant told Moore to leave and said, "We will talk to you in the morning." Moore asked defendant's wife about the clothes and she responded, "No comment."

Defendant testified that he had formerly been employed at a hospital as a substance abuse counselor. He admitted that he had been at his house in the afternoon of October 3, 1989. He said he had bought some new pipes for the wood stove and was putting them in. Defendant planned to join his wife at the Weaubleau Motel.

He testified that during the evening of October 3, he and Ed Jarvis went to bars in El Dorado Springs and Nevada, and returned home about midnight. He found his house in rubble and said that officer Mark Moore accused him of burning it down. Defendant told Moore that his wife was at the Weaubleau Motel. Jarvis drove defendant to the Weaubleau Motel. Asked by his attorney what happened upon his arrival at the Weaubleau Motel, defendant said:

"When I got there, I noticed the car had quite a few things, the station wagon had in it and I said they are already accusing me of, of burning my house down and just, looks real bad and Debbie was trying to tell me to just leave it. We don't have anything to worry about and I said 'We do not have something to worry about?' You know, here he is already accusing me of burning the house down and how does this look that we had some things in, items in the car.

Q. And you were afraid these items that you had in the car would further encourage somebody to arrest you?

A. Yes, I did.

Q. What did you do as a result of that?

A. Took the items, we all got in the car and we talked about it briefly. She didn't want to do that, but I said let's just do it and let's just do it. And we all got in the car and drove over to, drove down the highway to the Preston Hotel. I registered there I believe for my wife and signed her name, also signed my name and unloaded the things into the room, got back in the car and drove back to the Weaubleau Hotel."

Defendant denied burning his house down and speculated that the cause of the fire was "that possibly I left the ash pan door on my stove ajar." He said that the reason he went to the Preston Motel was that he panicked after "visiting" with officer Moore. He also testified that his wife was unemployed and the family's only income was her social security disability payment of approximately $300 a month.

Defendant contends that the evidence is insufficient because: (a) the state's attempt to establish a motive to commit arson was inadequate, (b) testimony of the deputy fire marshal showed only an unexplained fire, not a fire of incendiary origin, and (c) with proof only of an unexplained fire, opportunity, and arguably suspicious behavior, the state failed to establish proof of circumstances consistent with the guilt of defendant and inconsistent with every reasonable theory of innocence.

■ All of the elements of arson may be proven by circumstantial evidence. *State v. Galvan*, 798 S.W.2d 185, 188 (Mo.App. 1990). The circumstances need not be absolutely conclusive of guilt and need not demonstrate the impossibility of innocence. *Id.* The facts and circumstances on which the state relies must be consistent with each other, consistent with guilt, and inconsistent with every rational hypothesis of innocence. *State v. Picone*, 760 S.W.2d 471, 473 (Mo.App.1988). The guilty agency of the accused may be established by circumstantial evidence. *State v. Walters*, 735 S.W.2d 737, 740 (Mo.App.1987).

■ Arson is usually committed in stealth, without witnesses, and ordinarily must be proven by circumstantial evidence.

*State v. Harris*, 639 S.W.2d 122, 125 (Mo. App.1982); *State v. Walsh*, 624 S.W.2d 526, 529 (Mo.App.1981); *State v. Simpson*, 606 S.W.2d 514, 518 (Mo.App.1980). Although defendant's opportunity to commit the offense, alone, is insufficient to support a conviction for arson, *State v. Odum*, 351 S.W.2d 10, 15 (Mo.1961); *State v. Harris, supra*, 639 S.W.2d at 126, evidence of opportunity and a motive to commit arson "aid[s] in finding a defendant's guilt." *State v. Walters, supra*, 735 S.W.2d at 740. Conduct of defendant before and after the fire are circumstances which may tend to show his participation in the criminal act. *State v. Dorsey*, 724 S.W.2d 610, 612 (Mo. App.1986).

■ Defendant's house was, of course, "a building or inhabitable structure." § 569.050.1, § 569.010(2)(a). The house was on fire. The testimony of Wilson supported a finding that the fire was of incendiary origin. The crucial issue is whether defendant participated in the commission of the crime.

Approximately a month prior to the fire, defendant asked Lonna Burlingame if she would help him "set his place on fire." Defendant was present at the scene of the fire shortly before it occurred. Defendant had financial problems and the house was insured. Defendant was aware that his wife and children were spending the night at the Weaubleau Motel. Items of the family property were taken to the Weaubleau Motel in defendant's automobile. They included items not ordinarily taken on an overnight trip. During the middle of the night, defendant and his wife made arrangements to rent a room in another motel for the sole purpose of hiding the family belongings there.

■ Defendant argues that the evidence is insufficient because the state failed to establish a motive. It is at least arguable that the evidence supported a finding of motive, but motive is not an element of the offense. Presence or absence of motive may be circumstances aiding in arriving at a determination of guilt.

Defendant's argument that Wilson's testimony showed only an unexplained fire is

not supported by the record. Wilson testified without objection that the fire was of incendiary origin. In his brief, defendant seeks to challenge the weight of Wilson's testimony on that point, but weight of the evidence was a matter for the jury. Defendant's reliance on *State v. Paglino*, 291 S.W.2d 850 (Mo.1956), is misplaced because the evidence in that case failed to support a finding that the fire was of incendiary origin. That is not the situation here.

This court holds that the evidence was sufficient to support the verdict. The judgment is affirmed.

PARRISH, P.J., and SHRUM, J., concur.