**STATE of Missouri, Respondent,**

v.

**Galen P. STEWART, Appellant.**

**Galen P. STEWART, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. WD 44463, WD 46021.**

Missouri Court of Appeals,
Western District.

March 23, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 27, 1993.

Brad B. Baker, Office of the State Public Defender, Columbia, for appellant.

William L. Webster, Atty. Gen., Michael J. Runzi, Asst. Atty. Gen., Jefferson City, for respondent.

Before BRECKENRIDGE, P.J., and SHANGLER and SPINDEN, JJ.

BRECKENRIDGE, Presiding Judge.

Galen P. Stewart appeals from his conviction for arson in the second degree, § 569.050, RSMo Cum.Supp.1989, for which

he was sentenced, as a prior and persistent offender, to fifteen years imprisonment. He also appeals from the motion court's denial of his Rule 29.15 motion for postconviction relief. Stewart presents four points on appeal, claiming that the trial court erred in: (1) overruling his motion for acquittal and motion for new trial and entering judgment of guilty because the State did not present sufficient evidence to prove, beyond a reasonable doubt, every element of the offense charged; (2) denying him postconviction relief because he was denied effective assistance of counsel in that trial counsel failed to properly impeach prosecution witness Janice Helton's credibility; (3) denying him postconviction relief because he was denied effective assistance of counsel in that trial counsel failed to advise Stewart of the correct range of punishment he faced as a prior and persistent offender; and (4) submitting instruction number four because such does not accurately define reasonable doubt.

The conviction and the judgment on the postconviction motion are affirmed.

Stewart lived with his girlfriend, Beth Carr, and her three children in a basement apartment of a house in St. Joseph, Missouri, with Janice Helton and her family living in the remaining portion of the same house. At approximately 4:30 p.m. on February 26, 1990, Helton was talking on the telephone in her living room when the receiver was jerked from her hand and pulled toward the wall. Helton's fifteen year-old son, Elvin Ball, testified that he went outside to investigate and he saw Carr drop the telephone wires. Helton followed her son outside. Helton and her son both testified that Stewart yelled that he was going to either get a gun or burn the house down. Donald Bey, a next-door neighbor, testified that he was awakened by "screaming and hollering" and when he looked out the window he saw Carr tearing the telephone wires off the house.

After the argument, Stewart, Carr and her children walked off down the street to Stewart's father's house. Helton and her children waited for her husband to come home and then went to her brother's house,

which was four or five blocks away. Helton and her daughter returned to the house about 7:30 p.m., but, after hearing a noise outside, walked back to Helton's brother's house. Helton did not return to the house again until around 11:30 p.m., at which time the house was on fire and the fire department was attempting to extinguish the blaze.

Jolene Warthman, a neighbor, testified that when she was returning from work at approximately 11:30 p.m., she saw Stewart, whom she knew, enter the basement apartment. Approximately fifteen minutes later she saw the flames and heard the fire trucks. Bey testified that he was driving down the street just before the fire was discovered and saw a person run between the houses. Bey could not identify the person, but said the person was "around the same height" as Stewart. Bey's wife called the fire department.

Robert Caw, fire inspector and investigator for the St. Joseph Fire Department, testified that the burn patterns indicated that the fire originated in the basement and was incendiary in nature. Caw testified that the fire had been started at three locations within the apartment: under a door, on a chair and in the center of a mattress. It was Caw's opinion that a liquid accelerant had been poured around the apartment.

Stewart was arrested for arson by Detective Moore of the St. Joseph police department on February 27, 1990. Stewart told Detective Moore that he was in jail at the time of the fire and had not been to the apartment for two days. Although Stewart was in jail on the night of the fire, he was released at 8:25 p.m.

On January 11, 1991, Stewart was found guilty by a jury of second degree arson. He was sentenced, as a prior and persistent offender, to fifteen years imprisonment. Stewart filed a *pro se* motion for postconviction relief on June 6, 1991. An amended motion for postconviction relief was filed on August 15, 1991. The motions alleged that Stewart had received ineffective assistance of counsel. After an evidentiary hearing, the motion court denied Stewart's

postconviction motion and found that Stewart had received effective assistance of counsel. Stewart appeals both from his conviction and from the denial of his motion for postconviction relief.

■ In Point I, Stewart claims that the trial court clearly erred by overruling his motion for judgment of acquittal at the close of the evidence and his motion for new trial and by entering a judgment of guilty on the charge of arson in the second degree. Stewart argues that there was not sufficient evidence to prove beyond a reasonable doubt that Stewart knowingly damaged an inhabitable structure by starting a fire. Stewart asserts that the State's evidence was purely circumstantial, was internally inconsistent and did not refute his innocence.

■ In determining the sufficiency of the evidence on appeal, the court considers all evidence, whether circumstantial or direct, and all favorable inferences that can be drawn therefrom, in the light most favorable to the conviction, and rejects all contrary evidence and inferences. *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1992). Stewart argues that even when the evidence is viewed in the light most favorable to the verdict, the evidence is insufficient to support the verdict. The elements of arson in the second degree are that (1) a building was on fire; (2) the fire was of an incendiary origin, and (3) the defendant participated in the commission of the crime by knowingly damaging a building or inhabitable structure by starting a fire. Section 569.050, RSMo Cum.Supp.1989; *State v. Galvan*, 798 S.W.2d 185, 188 (Mo.App. 1990). Stewart concedes that the first two elements were established but challenges the State's proof of the third element, namely his participation in the commission of the crime.

■ Stewart argues that the State's case against him consisted solely of circumstantial evidence and, as a result, his conviction cannot be affirmed unless the facts and circumstances relied upon to establish his guilt are consistent with each other and with the hypothesis of his guilt, and are inconsistent with his innocence and exclude every reasonable hypothesis of innocence. *State v. Biddle*, 599 S.W.2d 182, 192 (Mo. banc 1980); *State v. Strother*, 807 S.W.2d 120, 123 (Mo.App.1991). Stewart's argument is without merit. The State may only be held to the higher standard of proof required by the "circumstantial evidence rule" if all of the evidence is circumstantial evidence and there is no direct evidence. *State v. Newbold*, 731 S.W.2d 373, 380 (Mo. App.1987). "*Direct evidence* is evidence which proves the existence of a fact in issue without other inference of that fact." *Id.*

The State did not rely solely on circumstantial evidence. The State presented direct evidence in the form of witnesses who testified as to Stewart's anger and his statement that he intended to burn the house. The State also presented an eyewitness who testified that she saw Stewart enter the basement apartment approximately fifteen minutes before the fire was discovered. The higher burden of proof required when all the evidence is circumstantial is not applicable in this case.

■ Stewart challenges the weight of the evidence on the basis that the testimony of the State's witnesses was contradictory and that Janice Helton's testimony lacked credibility. Determining the credibility of the witnesses and the inferences that can reasonably be drawn therefrom are matters for the jury. *State v. Nelson*, 674 S.W.2d 220, 224 (Mo.App.1984).

■ Stewart further argues that mere presence at the scene of the crime and opportunity to commit the crime are insufficient circumstantial evidence of guilt. *State v. Siraguso*, 610 S.W.2d 338, 341 (Mo.App.1980). When examining the evidence in the light most favorable to the conviction, there is sufficient evidence of Stewart's participation in the crime. Such evidence showed that the afternoon before the fire, Stewart was involved in an angry confrontation with Helton which gave Stewart a motive for burning Helton's house. The presence or absence of a motive may constitute circumstances which aid in determining guilt. *State v. Hen-*

*drickson,* 814 S.W.2d 609, 613 (Mo.App. 1991). Stewart threatened to burn Helton's house seven hours before the fire occurred. Stewart removed his family from the apartment and they spent the night at his father's house. Stewart was seen by a neighbor, who knew him prior to the fire, going into the basement apartment approximately fifteen minutes before the fire was detected. The fire inspector testified that the fire was incendiary in nature and originated in the basement. When Stewart was contacted by police after the fire, he lied when he told the detective that he was in jail at the time of the fire and that he had not been to his apartment for two days. Guilty knowledge may be inferred from false statements to police or deceptive behavior. *State v. Allen,* 817 S.W.2d 526, 528 (Mo.App.1991).

The State's evidence goes beyond merely establishing presence and opportunity by establishing motive, a threat, origin of the fire in Stewart's basement apartment and Stewart's presence in the apartment minutes before the fire. The evidence was sufficient to prove beyond a reasonable doubt that Stewart participated in knowingly damaging a building by starting a fire. *State v. Dorsey,* 724 S.W.2d 610, 612 (Mo. App.1986); *State v. Lewis,* 571 S.W.2d 125, 126 (Mo.App.1978). Point I is denied.

■ Stewart argues in Point II that his right to effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 18(a) of the Missouri Constitution, was violated in that Stewart's trial counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under the same or similar circumstances. He claims that he received ineffective assistance of counsel because his attorney failed to discover that a felony charge against Helton had been dropped less than one week before appellant's trial and, as a result, he was unable to use such information to impeach Janice Helton's credibility. Stewart alleges he was prejudiced because if trial counsel had impeached Helton with such evidence, he might have been acquitted.

■ On the appeal of the denial of a Rule 29.15 motion, the court is limited to a determination of whether the motion court's findings and conclusions are clearly erroneous. *Amrine v. State,* 785 S.W.2d 531, 533 (Mo. banc 1990). After reviewing the entire record, the findings and conclusions of the motion court will only be found to be clearly erroneous if the court is left with the definite impression that the motion court made a mistake. *Id.* Movant bears a heavy burden in establishing a claim for ineffective assistance of counsel. *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987). Movant must prove his or her allegations by a preponderance of the evidence and overcome the court's presumption that counsel is competent. *Amrine,* 785 S.W.2d at 534.

■ In *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), the United States Supreme Court set forth the following two-prong test applicable to claims of ineffective assistance of counsel: 1) defendant must prove that his or her attorney failed to exercise the skill and diligence that a reasonably competent attorney would have exercised in a similar situation; and 2) defendant must show that the attorney's failure to act in a reasonably competent manner prejudiced the defendant. Both prongs of the *Strickland* test must be established to prevail. *Amrine,* 785 S.W.2d at 534. A showing by movant that counsel has performed in a professionally unreasonable manner will not be sufficient to prevail. *Strickland,* 104 S.Ct. at 2066. Movant must demonstrate that there is a reasonable probability that, but for the unreasonable conduct of counsel, the result of the proceeding would have been different. *Id.* 104 S.Ct. at 2068.

It is unnecessary to address the prejudice prong of the *Strickland* test because the performance prong is dispositive. Stewart asserts that his trial counsel, Timothy Ernst, failed to locate and utilize information regarding the dismissal of the felony charges against Helton and, therefore,

did not exercise the skill and diligence of a reasonably competent attorney. To prevail on his claim of ineffective assistance of counsel for failure to investigate, Stewart must specifically describe the information his attorney failed to discover, establish that a reasonable investigation by trial counsel would have resulted in the discovery of such information and prove that the information would have aided or improved his position at trial. *Morris v. State*, 756 S.W.2d 654, 656 (Mo.App.1988).

■ Stewart identified the evidence which he believed his trial counsel failed to discover as evidence that Helton was motivated to give testimony against him due to the dismissal of a class C felony charge of "attempt to deliver a controlled substance in a county jail" which was pending against her until a week before Stewart's trial. Stewart presented evidence at the hearing on his postconviction motion that the criminal charge pending against Helton was, in fact, dismissed a week before Stewart's trial date, January 11, 1991. The prosecuting attorney and Stewart's trial counsel, Ernst, testified that the charge against Helton was dismissed on January 4, 1991, by an associate circuit judge after preliminary hearing, upon a determination of no probable cause. The court record in the case against Helton showed that the charge was "dismissed nolle pros" by an assistant prosecuting attorney. The dismissal by the State of a criminal charge pending against Helton was relevant and admissible evidence demonstrating a possible motivation by Helton to testify favorably to the State. *State v. Lockhart*, 507 S.W.2d 395, 396 (Mo.1974).

The motion court found, however, that even if a reasonable investigation would have revealed that an agreement to dismiss her criminal charge gave Helton a motive to give testimony favorable to the State and unfavorable to Stewart, there was no reasonable likelihood that such evidence would have resulted in a different outcome at trial. The motion court found that there was ample evidence before the jury of Helton's animosity toward Stewart over the fire to allow the jury a full and fair evaluation of Helton's testimony and her possible biases. The standard imposed by the Missouri Supreme Court on a claim of failure to investigate is that the evidence "would have aided or improved" Stewart's position. *Rice v. State*, 585 S.W.2d 488, 493 (Mo. banc 1979); *Morris*, 756 S.W.2d at 656. Although this court agrees that it is unlikely that there would have been a different outcome at trial, applying the Missouri standard, the evidence is of such a character that it would have aided or improved Stewart's position.

■ The motion court also found that there was no proof of the existence of an agreement between the prosecuting attorney and Helton, and that without proof of an agreement, the trial counsel could not be held to be ineffective. Missouri law, however, does not require the existence of a plea agreement between a witness and the State to demonstrate possible bias on the part of the witness. *Lockhart*, 507 S.W.2d at 396. It is sufficient to demonstrate the potential for bias if the circumstances are such that the witness would have a motive to favor the State. *Id.* Therefore, lack of proof of an agreement does not cause Stewart's claim to fail.

■ If the motion court's decision can be sustained on any ground, stated or not, it will be upheld. *See Dunn v. State*, 620 S.W.2d 13, 14 (Mo.App.1981). The crux of Stewart's claim of ineffective assistance of counsel for failure to investigate is that Stewart failed to discover information which an attorney would have discovered through reasonable investigation. Ernst testified that he learned that the court dismissed the charges against Helton after preliminary hearing. Stewart claims that the court record on Helton's charge demonstrates that the charge was dismissed by an assistant prosecutor rather than the court, and that a reasonable investigation by Ernst would have included a review of the court record.

At the hearing on Stewart's postconviction motion, there was no evidence as to what specific investigation Ernst conducted and what the source of his information was. The only inference possible from the

record is that Ernst received his incorrect information from the prosecuting attorney's office. The record also reveals that upon the dismissal of the charge against Helton, her criminal file in the associate division of the court was closed pursuant to § 610.105, RSMo 1986. Ernst could not have access to the record without court intervention. Considering that the prosecuting attorney would have a duty to disclose the truth regarding facts relevant to the case, it was not unreasonable for Ernst to rely on such information rather than initiate court action to open the closed record. Stewart, having the burden of proof, has failed to present sufficient proof that a reasonable investigation by trial counsel would have disclosed that Helton's charge had been dismissed by the State or that Ernst was unreasonable to rely on information from the prosecuting attorney's office. Point II is denied.

■ Stewart asserts a second ineffective assistance of counsel claim in Point III in which he alleges that trial counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under the same or similar circumstances by failing to advise Stewart of the correct range of punishment applicable to him as a prior or persistent offender. Stewart argues that he was prejudiced because if he had been correctly advised he might have chosen to enter a plea of guilty rather than proceed to trial.

Prior to trial, Ernst advised Stewart that he was facing a maximum prison sentence of seven years for a class C felony. Before the filing of the amended information charging Stewart as a prior and persistent offender, this was correct. Stewart, while aware of this range of punishment, rejected a plea offer for a recommendation by the prosecuting attorney for a two-year sentence. On the date of trial, the prosecutor amended the original felony information to add the allegation that Stewart was a prior and persistent offender. After the trial court received evidence and found that Stewart was a prior and persistent offender, the court announced that defendant was subject to an extended term of imprison-

ment. Stewart's trial counsel informed the court that he was under the mistaken impression that a persistent offender status only carried an increased percentage of mandatory jail time. The court informed Stewart that he was facing a term of imprisonment not to exceed twenty years. The court recessed the proceedings to allow Stewart to consult with his counsel. After such recess, while believing that he was facing twenty years imprisonment, Stewart advised the court that he did not want to plead guilty, but that he wanted to proceed to trial. The court was incorrect in its statement that Stewart was facing twenty years imprisonment as a prior and persistent offender, because Stewart's charges were covered by a previous version of § 558.016, RSMo 1986, where the maximum range of punishment available was fifteen years.

To succeed on a claim for ineffective assistance of counsel under the *Strickland* test, Stewart must demonstrate both that his trial counsel's performance was deficient and that, but for the deficiency, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 104 S.Ct. at 2068. Stewart has not established that the outcome of the proceeding would have been different, because he has failed to show that he would have pleaded guilty if he was aware that the actual sentence he faced was fifteen instead of twenty years. If Stewart was unwilling to plead guilty when he was facing seven years imprisonment and was unwilling to plead guilty when he believed he was facing twenty years, there is no basis to believe he would have pleaded guilty if he had known he was facing fifteen years. Because Stewart has failed to meet the prejudice prong of the *Strickland* test, it is unnecessary to address the performance prong. Point III is denied.

■ In Point IV, Stewart claims that the trial court erred in submitting instruction number four, conforming to MAI–CR3d 302.04, because it improperly defines reasonable doubt. Stewart asserts he was denied his right to due process in that the language "firmly convinced" suggests a

higher degree of doubt than is constitutionally required for acquittal and the statement that the law does not require proof which "overcomes every possible doubt" could have resulted in a reasonable juror interpreting the instruction to allow a finding of guilt based on a degree of proof below that required by due process. Stewart argues that in light of *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), the language of instruction number four does not satisfy the mandates of the due process clause. The Missouri Supreme Court in *State v. Griffin,* 818 S.W.2d 278, 282 (Mo. banc 1991), has held that MAI–CR3d 302.04 meets the constitutional requirements for a definition of reasonable doubt. This court is compelled to follow the last controlling decision of the Missouri Supreme Court. *State v. Weems,* 800 S.W.2d 54, 58 (Mo.App.1990). Point IV is denied.

The conviction and denial of relief under Rule 29.15 are affirmed.

All concur.